### In re CONSOLIDATED DISTRIBUTORS, Inc.

(Circuit Court of Appeals, Second Circuit. April 7, 1924.)

#### No. 122.

1. **Bankruptcy ⊙⟹482(1)—Attorney's fees allowable only for services beneficial to estate.**

   It is a purpose of the present Bankruptcy Law to reduce to the lowest minimum the cost of administering the property of bankrupts as regards fees of officers and attorneys, and while attorneys are to be allowed reasonable compensation for their services, such allowance may be made only for services which were beneficial to the estate.

2. **Bankruptcy ⊙⟹482(1)—"Reasonable" attorney's fees construed.**

   Section 64b (3) of the Bankruptcy Act (Comp. St. § 9648), including in the cost of administration "one 'reasonable' attorney's fee," means an allowance that will fairly compensate the attorney for the services he has rendered, and from which the general body of creditors has benefited.

   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Reasonable.]

3. **Bankruptcy ⊙⟹482(3)—Fees allowable to attorneys for petitioning creditors are limited to services in preparing and filing petition and securing adjudication.**

   The allowance to attorneys for petitioning creditors must be confined to services actually rendered in preparing and filing the petition and prosecuting it to the adjudication of the bankrupt.

4. **Bankruptcy ⊙⟹482(3)—Allowance to attorneys for petitioning creditors held excessive.**

   Where an answer was filed in involuntary proceedings, but was afterward withdrawn, and adjudication was by consent, and the only services rendered by attorneys for the petitioning creditors were in preparing and filing the petition, and in preparing for trial on the answer, an allowance to them of $5,000 *held* excessive, and reduced to $1,500.

5. **Corporations ⊙⟹553(3)—Creditors' bill for appointment of receivers to conserve assets need not allege insolvency.**

   Insolvency of a corporation is not an essential prerequisite to the appointment of receivers to conserve its assets.

Petition to Revise Order of the District Court of the United States for the Southern District of New York, in Bankruptcy.

In the matter of the Consolidated Distributors, Inc., bankrupt. On petition of the Times Square Auto Supply Company, Inc., to revise order of District Court. Reversed and remanded.

---

⊙⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Kaye, McDavitt & Scholer, of New York City (Benjamin M. Kaye and Harold L. Fierman, both of New York City, of counsel), for revising petitioner.

Cass & Apfel, of New York City (Alvin C. Cass, of New York City, of counsel), for petitioning creditors.

Before ROGERS, HOUGH, and MAYER, Circuit Judges.

ROGERS, Circuit Judge. This is a petition to revise an order dated on August 6, 1923, confirming the report of a special commissioner, allowing to the attorneys for the petitioning creditors the sum of $5,000 for professional services rendered, together with $60.66 disbursements, and directing that payment be made to them by the trustee of the sums so allowed.

The petition to revise is filed by the Times Square Auto Supply Company, Inc., a corporation formed by and controlled by about 90 per cent. of the creditors of the bankrupt. The petitioning creditor was organized pursuant to a plan of .reorganization of the bankrupt corporation. It is directly affected by the order appealed from, as it has given a bond to the trustee to guarantee the payment of all allowances, fees, and dividends in the bankruptcy proceeding. It appears that on September 14, 1921, a bill in equity was filed in the Southern District of New York against the Consolidated Distributors, Inc., and three receivers were appointed on the application of creditors whose claims aggregated over $1,000,000. This amount was more than 50 per cent. of the total indebtedness.

A few days after this action was taken an attorney arrived from Chicago with a power of attorney given him by three creditors, whose claims aggregated about $1,500. He retained a New York firm of attorneys, Cass & Apfel, who filed a petition in bankruptcy in the Eastern District of New York, on a petition signed by him under his power of attorney for these creditors, whose claims aggregated about $1,500. The creditors, who were interested in the equity proceedings and were desirous of reorganizing the company, requested that the bankruptcy proceedings be contested. Answers to the bankruptcy petition were filed. The case was never noticed for trial. The only legal work done by the attorneys for the petitioning creditors, besides filing the petition in involuntary bankruptcy, was on the motion involving their right to examine the receivers and officers of the corporation in an effort to establish insolvency and acts of bankruptcy.

The creditors meanwhile created a reorganization committee and prepared a plan of reorganization, which was assented to by over 90 per cent. of the creditors. The question was then raised whether to put through the reorganization in equity or proceed by means of a bankruptcy sale, and thereby cut off some enormous claims for future rent, and more definitely establish title to assets in New York and in other states. It was decided that the bankruptcy sale was preferable. Thereupon the answers were withdrawn, and adjudication was entered, and the sale of assets took place immediately. In order that the firm of Cass & Apfel might receive compensation for having filed the petition, the reorganization committee agreed to elect Mr. Apfel, of the

firm of Cass & Apfel, as trustee, under an agreement whereby he was to receive as compensation his regular trustee's commissions on whatever actual cash passed through his hands, plus such sum as the reorganization committee might see fit to give him.

Under the bankruptcy sale, the creditors took over the assets, and placed with said trustee about $42,000 in cash to cover dividends on the claims of nonassenting creditors, taxes, administration expenses, etc. Mr. Apfel, as trustee, disbursed over $20,000 and received his commissions thereon. The entire handling of the estate of the bankrupt was done by the equity receivers and their counsel.

There were 40 retail stores scattered over the United States, as far west as San Francisco. Over half of these were discontinued, and the assets brought to New York, in merchandise or cash. Ancillary proceedings were had in California and Illinois. The estate was made liquid, and put in position for reorganization. With none of this did the attorneys for the petitioning creditors have anything to do whatsoever. All that they did was to file the petition, and then try to find out, by examination, if the concern was insolvent and had committed acts of bankruptcy. All this was done at a time when the company was in the hands of the three receivers appointed in the Southern district. The special commissioner concluded his report as follows:

"The petitioners ask for an allowance of $5,000 for their services, with $60.66 disbursements. After examination of this record, and in view of the very satisfactory results of their efforts to sustain the bankruptcy proceedings for the benefit of all of the creditors, and after hearing the argument of counsel upon the subject, I cannot conscientiously say that the amount asked for has not been fairly earned. The legal aspects of the matters before the court prior to the adjudication were unusual and unique in many respects, and the time and the careful study of such aspects in support of the bankruptcy proceedings given by these petitioners, in my opinion, amply warrant the amount asked for, considering the results of their time and work. In view of these considerations, I therefore recommend that the petitioners be allowed and paid out of the estate the sum of $5,060.66, the same to be in full of all allowance and disbursements as attorneys for the petitioning creditors, all of which is respectfully submitted."

The District Judge approved the special commissioner's report and ordered paid the amount recommended therein. He stated that he had examined the matter with great care and was fully persuaded that the special commissioner's recommendation was justified. He concluded:

"The amount which he allows is, if anything, rather modest, when considered in the light of the allowances which have been paid for services in the equity receivership, a proceeding which was finally held must give way to this bankruptcy."

[1] Bankruptcy Act, § 62 (Comp. St. § 9646), reads as follows:

"*Expenses of administering Estates.*—a. The actual and necessary expenses incurred by officers in the administration of estates shall, except where other provisions are made for their payment, be reported in detail, under oath, and examined and approved or disapproved by the court. If approved, they shall be paid or allowed out of the estates in which they were incurred."

And section 64b (3), in stating the debts which are to have priority and the order of payment, names the cost of administration, including—

"one reasonable attorney's fee, for the professional services actually rendered, irrespective of the number of attorneys employed, to the petitioning creditors

in involuntary cases, to the bankrupt in involuntary cases while performing the duties herein prescribed, and to the bankrupt in voluntary cases, as the court may allow." Comp. St. § 9648.

The services to be compensated must be those rendered for the common benefit. In all such cases the allowances are to be guarded by a most cautious regard for the rights and interests of all the creditors. In re New York Mail Steamship Co., 18 Fed. Cas. 155, No. 10,208. Attorneys are to be allowed a reasonable compensation for their services, but only when they are beneficial to the estate. In Randolph v. Scruggs, 190 U. S. 533, 539, 23 Sup. Ct. 710, 713 (47 L. Ed. 1165), in considering the compensation to be paid the attorney out of the estate in the hands of the trustee, the Supreme Court said:

"We are not prepared to go further than to allow compensation for services which were beneficial to the estate."

See, too, Collier on Bankruptcy (13th Ed.) vol. 2, § 62a, p. 1351.

It is important to keep in mind in cases of this character that the general purpose and policy of the Bankruptcy Act requires that, just as far as possible, all of the assets of the bankrupt are to be kept available for the benefit of creditors, and that estates are to be administered with severe economy and at a minimum of expense. The Circuit Court of Appeals in the Seventh Circuit in 1900, speaking of the present Bankruptcy Act, said in Re Curtis, 100 Fed. 784, 792, 41 C. C. A. 59, 68:

"The policy of the present bankrupt act, in contrast with the provisions of the previous law, discloses clearly the design of Congress that the administration of bankrupt estates should be had at the minimum of expense."

It then quoted, with its approval, the following statement from the opinion in the court below:

"The present bankrupt law was evidently intended to reduce to the lowest minimum the costs of administration, as regards fees of officers created by the act, as well as those of attorneys who may be called to assist the court in the preservation and distribution of the bankrupt estate."

And in Dunlap Hardware Co. v. Huddleston, 167 Fed. 433, 434, 93 C. C. A. 69, 70, the Circuit Court of Appeals in the Fifth Circuit quoted the above passage saying:

"This statement has our approbation and a strict compliance therewith is recommended in this circuit."

[2] This court is in hearty accord with the sentiments above expressed. It is most important in the administration of the Bankruptcy Act to observe that the language of the act makes it the duty of the courts to see that the fees paid to attorneys shall be "reasonable." We construe the word "reasonable" in this connection to mean that the allowance which can be made to an attorney for services rendered in a bankruptcy proceeding must be such as will fairly compensate him for the service he has rendered and from which the general body of creditors has benefited. In all these cases the sine qua non of the allowance is the benefit the bankrupt's estate and its creditors have derived from the services rendered. See Gillespie v. J. Piles & Co., 178 Fed. 886, 892; 102 C. C. A. 120, 44 L. R. A. (N. S.) 1.

In the case of In re Curtis, 100 Fed. 784, 785, 41 C. C. A. 59, 60, the Circuit Court of Appeals for the Seventh Circuit cut down an allowance to the attorneys from $12,500 to $2,000, and in doing so said:

"We have searched this record with care, that we might arrive at just judgment with regard to the amount that should be allowed for the service rendered. We have been solicitous to award full reasonable compensation, but careful to withhold inordinate allowance. We reach the conclusion that an allowance of $2,000 fully compensates the service. We have doubted if this be not too large a sum. We are not unmindful of the dignity of the profession, nor forgetful of the important duty of counsel. We would not underrate that duty. We would magnify his office. For exacting labor done, weighty responsibilities assumed, and great results accomplished, we would deal out compensation with liberal hand. We think, however, that the dignity and honor of the profession are not conserved, or its influence for good promoted, by excessive allowance for service. That would lend countenance to the suggestion, sometimes heard, that the commercial spirit of the age has invaded even the legal profession, to the impairment of its dignity, the blunting of its sense of honor; that a profession instituted for the maintenance of justice has become degenerate, and that its main calling now is a vulgar scramble for the 'almighty dollar.' We cannot bend our judgment to lend sanction to a foul aspersion."

We find ourselves in entire sympathy with the statement which we have quoted. The administration of the Bankruptcy Law is to be conducted primarily for the benefit of the creditors of a bankrupt's estate, and that is and ought to be the policy of the law. Any different policy would discredit the law itself and the courts. We have no doubt that the District Judge was conscientious in fixing the amount of compensation he allowed the attorneys in this case. He would not intentionally lend himself to extravagance and injustice, and we think he was in error, and that his conclusion was founded in a misconception of the ground upon which the allowance was to be based. In our opinion, under the circumstances disclosed, the allowance of $5,000 is unreasonable compensation to the attorneys for the service they rendered to the bankrupt's estate.

[3] The general rule is that attorneys for petitioning creditors in a bankruptcy proceeding are entitled to an allowance for the services rendered by them to the petitioning creditors in the preparation and filing of the petition in bankruptcy. The allowance, however, must be confined to services actually rendered in preparing and filing the petition and prosecuting it to the adjudication of the bankrupt. Collier on Bankruptcy (13th Ed.) vol. 2, p. 1360, (e). When an adjudication has been obtained, the bankrupt's estate passes under the control and jurisdiction of the court and its officers. Thereafter there is no necessity and no opportunity for the attorneys of the creditors to render actual service to the estate.

[4] In the instant case it is not our understanding that any one is challenging in this court the right of the attorneys for the petitioning creditors to be compensated for the services they actually rendered down to the time of the adjudication. Such a challenge, if made, could not be sustained. But the right to compensation for any services rendered by them after adjudication may be contested herein, as may be the amount of the allowance made, on the ground that it is excessive and therefore unreasonable. The record contains an affidavit, made by

the attorney for the trustees, which sets forth, as it seems to us, truthfully the facts, as follows:

"On September 14, 1921, a bill in equity was filed in the Southern district of New York against Consolidated Distributors, Inc., and three receivers were appointed  *  *  *  on the application of creditors whose claims aggregated over 50 per cent. of the total indebtedness of over $2,000,000. On September 19, 1921, the attorneys for the petitioning creditors herein filed a petition in involuntary bankruptcy in this court, on claims of three creditors whose total claims did not aggregate $2,000. As the creditors were desirous of preserving the business and reorganizing it, rather than have a sale at a ruinous price in bankruptcy, they instructed the attorneys for the receivers to contest the bankruptcy. Thereupon the attorneys for the receivers and for the company filed answers denying the bankruptcy of the company. The attorneys for the petitioning creditors never noticed this issue for trial. The most they did was to make motions to examine the receivers, and various parties, in an effort to prove the insolvency. After lengthy hearings, Judge Garvin granted their motion, but this was taken up to the Circuit Court of Appeals, on certificate to review and on the stay granted by the Circuit Court of Appeals.

"In the meantime, the creditors had formed a creditors' committee and evolved a plan of reorganization, and early in 1922 this plan was sent out to the creditors, and over 90 per cent. became parties to the plan. The creditors considered the question of whether to acquire the assets for the reorganization by purchase in the equity proceedings, or if it would be more advisable to have an adjudication in bankruptcy to purchase the same in bankruptcy proceedings. There were a number of very large rent claims against the company, and the only way of terminating these claims was by an adjudication in bankruptcy. Accordingly, as a matter of convenience and solely for the purpose of assisting in putting through the reorganization, the company consented to an adjudication in bankruptcy in March, 1922, and at the first meeting of creditors, on April 7th, elected Charles L. Apfel trustee.

"It is thus evident that the services of the attorneys for the petitioning creditors have been of no value whatsoever to the estate, beyond the fact that they filed the petition in bankruptcy, which was later availed of by the creditors to secure an order of adjudication. The assets of the estate were from the beginning in the hands of the equity receivers. From the receivers the assets passed to the trustee, and from the trustee to the reorganization committee. The services in preserving the assets and putting through the reorganization were rendered by the attorneys for the receivers and by the attorneys for the reorganization committee. The attorneys for the petitioning creditors rendered no services in this regard."

In addition it ought to be stated, in order that the situation may be more fully understood, that after the petition in involuntary bankruptcy was filed the creditors who had instituted the proceedings which resulted in the equity receiverships were opposed to the proceedings in the bankruptcy court, and resisted at first the adjudication; and from September 19, 1921, when the involuntary petition in bankruptcy was filed, until about March 21, 1922, when adjudication was had, the counsel for the petitioning creditors were more or less engaged in an attempt to get the evidence to establish the fact of the alleged insolvency of the bankrupt or that acts of bankruptcy had been committed. These attorneys seem to think that it was due to them that the assets of the bankrupt's estate, amounting to $443,000, or perhaps $1,000,000, depending upon which figures are taken, and which were in the hands of the equity receivers, were brought into the bankruptcy court and came into the possession of the trustee in bankruptcy.

We do not think this claim is justified. These assets were the result of the steps taken in the equity proceedings, and the creditors in that

proceeding, for reasons of their own and quite independent of any action taken by the counsel for the petitioning creditors, finally decided to consent to proceed in the bankruptcy court. After a careful consideration of all the facts disclosed in the record, we have come to the conclusion that the allowance of $5,000 to the attorneys for the petitioning creditors is unreasonable in amount and should be reduced to $1,500, which we think is a liberal allowance for the services they rendered.

[5] Before concluding this opinion. we may say that counsel for the appellee argued in this court that the equity proceedings were invalid, and that the District Court was without authority to appoint the receivers, as the bill did not allege insolvency. While that question is not before us upon this record, we may point out that in Luhrig Collieries Co. v. Interstate Coal & Dock Co. (D. C.) 281 Fed. 265, 269, the court said that it was—

"not necessary to allege that the corporation is presently insolvent, or even that, when properly managed, it will not have a surplus for distribution among stockholders."

And it was also said:

"The corporation may well be solvent if its assets be nursed along, and insolvent if they be thrown to the creditors for piecemeal sale."

On appeal to this court in 287 Fed. 711, this court affirmed the court below and declared:

"The jurisdiction of the court below, acting with ancillary assistance of other and appropriate courts, was perfect."

The order is reversed, and the case is remanded, with directions to the court below to proceed in the matter in conformity with this opinion.