### BAILIE et al. v. ROSSELL.
### No. 4862.

Circuit Court of Appeals, Third Circuit.
Aug. 4, 1932.

Carter, Ledyard & Milburn, of New York City (John R. Bartels and Edwin De T. Bechtel, both of New York City, of counsel), for appellants.

David J. Reinhardt and Charles B. Evans, both of Wilmington, Del., for appellee.

Before BUFFINGTON, DAVIS, and THOMPSON, Circuit Judges.

BUFFINGTON, Circuit Judge.

This appeal concerns the allowance of fees to a receiver in an amicable receivership. Where a court is called upon to administer the affairs of a financially embarrassed corporation and is itself unable to oversee the management of its business and conserve its property, it is customary and proper for such court to call to its aid in administration persons or corporations who become the quasi officers, or, so to speak, the right hand of the court. To look on receivers and receiverships in any other light is to lose sight of their real status, for, as said in Penner v. Drilling Development Co. (D. C.) 293 F. 766, 767, "It must be remembered, though too often forgotten, that receiverships are not to enrich the incumbents and counsel." The law placing on the court the duty of conserving, operating, or liquidating the property of an unfortunate corporation, and this duty of the court being intrusted to the court's officer, the fixation of such receiver's compensation resolves itself into the inquiry what was the duty, labor, responsibility, imposed on the court which it performed by the hands of its assisting receivers. This general principle is recognized by federal courts, when called on to give the sanction of their approval to allowances made in receiverships which in the final analysis are paid by creditors. In that respect the Supreme Court of the United States, speaking by the late Chief Justice Taft, said: "We are desirous of making it clear by our action that the judges of the courts, in fixing allowances for services to court officers, should be most careful, and that vicarious generosity in such a matter could receive no countenance." In re Gilbert, 276 U. S. 294, 48 S. Ct. 309, 310, 72 L. Ed. 580. This warning of the Supreme Court against "vicarious generosity" has also been sounded by other federal courts.

In Trustees Corp. v. Kansas City, M. & O. Ry. Co., 26 F.(2d) 876, 882, Judge Kenyon, of the Eighth Circuit, said: "I agree with the statement in the opinion that 'the receiver and his counsel are entitled to be well paid for the services they rendered.' While the receiver and his counsel are entitled to be well paid, there is no reason why they should be overpaid. It seems to me there has been a growing tendency in the courts to allow fees to receivers and their counsel far beyond the standards of compensation for similar services where no receivership existed. *There is no particular divinity surrounding a receivership and no magic in the appellation 'receiver' that changes ordinary and usual services into something of exaggerated value.*"

High on Receivers properly summarizes a court's duty: "The controlling considerations in fixing a receiver's compensation are the fair value of the time and labor required in the performance of his duties, *as measured by ordinary business standards*, and the degree of activity, integrity and dispatch with which the work has been performed."

With these principles—the italics are ours—as a guide, we turn to the facts of this case.

The Winchester Repeating Arms Company owned and operated for many years an extensive plant in New Haven, Conn., and also had property in California. It was solvent, but in the pressure of the times it became unable to meet its obligations and was threatened with suits and dismemberment. To conserve its property and continue its operation a friendly receivership was resorted to, to protect its Connecticut and California assets. Although the company had no assets whatever in the state of Delaware, the usual course of seeking a receivership in that state as a formal basis of receiverships in Connecticut and California was followed because of the fact that the company had a Delaware charter. Accordingly, on January 22, 1931, a creditors' bill praying for the appointment of receivers was filed in the United States District Court for the District of Delaware, and, on the answer and consent of the company, John S. Rossell of Wilmington, Del., and William A. Tobler of New Haven, Conn., were appointed receivers by that Court. The same day, on a like application filed in the United States District Court for Connecticut, William A. Tobler and the Union & New Haven Trust Company of New Haven, Conn., were appointed receivers by that court, and on January 24, 1931, on a like application filed in the United States District Court of California, William A. Tobler and Charles K.

Knight, of San Francisco, were duly appointed receivers by that court.

The record of the court below in the Delaware receivership shows that beyond approving a bond for costs, and the joint bond of the two receivers, no further orders were made by that court. The court appointed no appraisers and no inventory was filed, for the sufficient reason that the company had no property in Delaware and no assets were to come into the hands of the two Delaware receivers. Meanwhile the Connecticut receivership was so proceeded in that on November 28, 1931, the property of the company had been there administered by the Connecticut receivers and the plaintiff petitioned the Delaware court to approve the decree of the Connecticut court of foreclosure and sale by the Connecticut court. Such order of approval was made the same day by the Delaware court. It will thus appear that so far as the court was concerned, the receivership involved no work, direction, or administration of the property of the company on its part or the necessity of any administrative work on the part of its two receivers, Messrs. Tobler and Rossell. So far as local and able counsel for them is concerned, it appears such counsel was furnished and paid for by the company, and as no suggestion is made that the premium of the joint surety bond given by them was paid by them, we conclude that such premium, as well as the fees of counsel, were paid by the company.

Clearly these two Delaware receivers were not required, as such, to meet any administrative responsibilities. The Connecticut court's receivership resulted in a reorganization through a sale of the company's assets within ten months. The responsibility for the carrying on of the company's business meanwhile and for such sale rested wholly on the Connecticut court and the Connecticut receivers, and in meeting those responsibilities they had at hand the consultant assistance of a bondholders' protective committee, a debenture holders' committee, and a reorganization committee of the company itself. The compensation of William A. Tobler was paid by the Connecticut court. He makes no claim for services under the Delaware receivership, and it is clear he could support nothing beyond a nominal claim, for he rendered no service to the Delaware court, for as was said in a case where the charter was in Montana and the assets and active receivership service was in Idaho, "Herein (Montana) his services were merely formal and comparatively unimportant." Penner v. Drilling Development Co. (D. C.) 293 F. 766.

On December 21, 1931, his coreceiver presented a petition to the court below for allowance as coreceiver, which was acted upon by the court, an allowance made, and from such allowance the three committees appealed.

In view of the direction of the Supreme Court already quoted, that "judges of the courts, in fixing allowances for services to court officers, should be most careful, and that vicarious generosity in such a matter could receive no countenance," the proofs have had our most serious consideration, with the result that we find no proof of services or responsibility on the part of the Delaware receivers as would warrant this court in allowing anything beyond the sum of $2,500, which the court will allow Mr. Rossell in a modified decree, which the court below will enter.