### In re 2747 MILWAUKEE AVE. BLDG. CORPORATION.

### No. 57262.

District Court, N. D. Illinois, E. D.

Oct. 24, 1935.

Supplemental Opinion Nov. 19, 1935.

558

WOODWARD, District Judge.

A plan of reorganization of the above-named debtor has been confirmed. Applications for fees and allowances have been made as follows:

| | | | |
|---|---|---|---|
| Leo S. Samuels [of Chicago, Ill.]:<br>Attorney for petitioning creditors, | Fees<br>Expenses | $6,000.00<br>134.06 | $6,134.06 |
| Francis A. Lackner:<br>Employee of petitioning creditors to prepare plan of reorganization, | Fees | | 800.00 |
| Schwartz & Cooper [of Chicago, Ill.]:<br>Attorneys for debtor, | Fees | | 7,500.00 |
| Benjamin E. Cohen [of Chicago, Ill.]:<br>Attorney for trustee, | Fees | | 1,200.00 |
| Howard K. Hurwith:<br>Trustee, | Fees | | 2,500.00 |
| Taylor, Miller, Busch & Boyden [of Chicago, Ill.]:<br>Attorneys for intervening creditor, | Fees | | 200.00 |
| Butz, Von Ammon & Marx [of Chicago, Ill.]:<br>Attorneys for trustee under trust deed, | Fees | | 5,000.00 |
| Chicago Title & Trust Company:<br>Services to bondholders' committee, | Fees<br>Expenses | 1,500.00<br>559.40 | 2,059.40 |
| Barkhausen et al.:<br>Bondholders' committee, | Fees<br>Expenses | 10,523.00<br>534.21 | |
| | | | 11,057.21 |
| Butz, VonAmmon & Marx [of Chicago, Ill.]:<br>Attorneys for bondholders' committee,<br>Total | Fees | | 4,000.00 |
| | | | $40,450.67 |

The court at this time is withholding its ruling on the application of the bondholders' committee and its attorneys for the allowance of their fees and expenses.

The applications were referred to a special master, who has submitted his report with recommendations.

The Corporate Reorganization Act (Bankr. Act, § 77B, 11 USCA § 207) was framed with the view of economical administration. The allowance of fees and expenses, therefore, is of prime importance. The pertinent statutory provisions may be summarized as follows:

Section 64b (3) of the Bankruptcy Act (as amended by Act May 27, 1926, § 15, 11 USCA § 104 (b) (3), of which section 77B (11 USCA § 207) is a part, provides for the payment of one reasonable attorney's fee to petitioning creditors, irrespective of the number of attorneys employed.

Section 77B (k), 11 USCA § 207 (k) provides that, with certain exceptions not material here, the general provisions of the Bankruptcy Act shall apply to proceedings under section 77B.

Section 77B (b) (3), 11 USCA § 207 (b) (3), provides that the plan must contain provisions for the payment in cash or securities of the costs of administration and other allowances found by the court to be reasonable.

Section 77B (c) (9), 11 USCA § 207 (c) (9), provides that the judge may allow reasonable compensation and reimbursement for actual and necessary expenses incurred in connection with the proceeding and the plan to officers, parties in interest, depositaries, reorganization managers, and committees or other representatives of creditors or stockholders, and the attorneys or agents of any of the foregoing and of the debtor.

■ The court may allow only the fees and expenses authorized by the statute, and may not enforce, as a charge against the debtor's property, a liability neither assumed by it nor imposed by the Bankruptcy Act.

■ Under the provisions of section 77B, fees, allowances, and expenses which may

be awarded by the court fall into two categories: (1) Those in connection with the proceeding and the plan, as described in subsection (c) (9), 11 USCA § 207 (c) (9), that is, those incurred in this proceeding; and (2) those incurred in a prior receivership or trusteeship, as described in subsection (i), 11 USCA § 207 (i), being the reasonable administrative expenses and allowances in a prior federal or state court proceeding.

Whether the fees and allowances are awarded for services in connection with the present proceeding, or are allowances in the prior proceeding, they must be reasonable. Moreover, subsection (k) specifically provides that section 64 of the Bankruptcy Act shall apply to a 77B proceeding, and subsection (b) (3) of section 64 permits only reasonable compensation for services actually rendered. It will therefore be observed that the rule of reasonableness as to compensation to be allowed is stressed in the three sections noted. Further, under the General Bankruptcy Act the design of Congress was that the administration of bankrupt estates should be had at the minimum of expense. In re Curtis (C. C. A.) 100 F. 784, 792; 2 Collier on Bankruptcy (13th Ed.) p. 1351.

The intent of the act is to minimize the expense of debtor's rehabilitation, wherein it will be noted that the general purpose is to facilitate amicable adjustments between creditors and distressed debtors under the supervision of the bankruptcy court, which holds the property during the period of readjustment, thus saving the debtor in the first instance from liquidation. The estate is kept intact under the jurisdiction of the court, the purpose being to disturb the operation of the business as little as possible, thereby minimizing losses caused by the filing of the petition. The intent of Congress to provide relief, to rehabilitate the debtor, and to minimize the cost of administration, is further expressed in the following:

(1) Compensation allowed must be found to be reasonable.

(2) Ancillary receiverships are obviated, and the estate is administered by one trustee, thereby saving the ancillary cost.

(3) Debtor corporation may be the finally reorganized corporation, thus saving the cost of the formation of a new corporation and the expense incident thereto.

(4) Outstanding securities may be exchanged or extended, and liens modified or satisfied, saving the cost of new securities and the expense of foreclosure.

(5) The debtor may be continued in possession and its officers retained at salaries approved by the judge, or, because of their interest, at no salaries, thus saving the expense of a trusteeship.

(6) New securities may be issued free from stamp tax.

(7) A plan of reorganization may be accepted by creditors and stockholders before the petition is filed, thus shortening the proceeding.

The attorney for the petitioning creditors, under subsection (c) (9), is asking for an allowance of $6,000. Although he performed conscientious services, yet in view of the rule of reasonableness, an allowance of such sum would be excessive.

Before any allowance can be made, the court must determine for what services the attorney for petitioning creditors is entitled to receive compensation from the debtor estate.

Section 77B (a), 11 USCA § 207 (a), provides that the burden of satisfying the court that the petition has been filed in good faith is upon the petitioner, regardless of whether the petition is voluntary or involuntary. Manati Sugar Co. v. Mock (C. C. A.) 75 F.(2d) 284.

While no satisfactory and comprehensive definition can be given to the vague term "good faith," it is certain that in a 77B proceeding, one of its elements is that it must appear that there is at least some prospect that the affairs of the debtor corporation may be reorganized. A general showing, therefore, should be made, either in the petition or otherwise, that the circumstances reasonably indicate the desirability and possibility of a reorganization. An allowance, therefore, may be made to the attorney for the petitioning creditors for actual services rendered in establishing "good faith."

If the court is satisfied that the petition has been filed in "good faith," the petition is approved and the court takes jurisdiction of the debtor and its property. The services required of an attorney for petitioning creditors under section 77B are similar to those rendered by an attorney for petitioning creditors under the General Bankruptcy Act, and an order approving the petition is equivalent to an order of adjudication in bankruptcy.

■ The Circuit Court· of Appeals for the. Second Circuit, in the case of In re Consolidated Distributors, 298 F. 859, 863, holds that the allowances must be confined to services actually rendered in preparing and filing the petition and prosecuting it to the adjudication of the bankrupt, whereupon the estate passes to the control and jurisdiction of the ˙ court, and thereafter there is no necessity and no opportunity for the attorney for the petitioning creditors to render actual service to the estate.

The approval of the petition in a 77B proceeding concludes the services required of petitioning creditors. However, their service may extend to and include the appointment of a temporary and permanent trustee. Such approval opens the door of the court to suitors who desire debtor's reorganization. For such services actually rendered, the attorney for the petitioning creditors is entitled to receive reasonable compensation from the debtor estate.

■ Without contest, the petition was approved. Subsequent thereto, with leave of court, petitioning creditors filed a plan of· reorganization. This plan was not approved, and bore no resemblance to the approved and accepted debtor's amended plan, which was the result of collaboration with the attorneys for petitioning creditors and the bondholders' protective committee. To the extent of their participation in debtor's plan, the attorney for the petitioning creditors is entitled to receive reasonable compensation for actual services rendered.

The attorney for petitioning creditors rendered further beneficial services to the debtor estate in the appointment of the temporary and permanent trustee, in the matter of claims, and other minor services as reported by the special master. The court recognizes these services.

The court is of the opinion that the sum of $3,000 is a reasonable allowance for the services rendered by the attorney for the petitioning creditors, and the fee is fixed at that amount. Petitioning creditors are allowed the sum of $134.06, representing reimbursement for advances.

■ The court is asked to allow a fee to a real estate expert employed by petitioning creditors. ˙The work for which he asks compensation consists of investigating the affairs of the debtor, preparing and submitting to petitioning creditors the data for their plan, securing consents thereto, investigating court records, and attending hearings before the master on the fairness of the debtor's plan. He further states that it will be necessary to spend additional time in putting the debtor's plan into effect.

Part of these services are compensable from the estate of the debtor. He may be compensated only for those services ˙which directly affected the question of "good faith." The reasonable value of these services is the sum of $60, which is allowed to Francis A. Lackner.

The remaining services were rendered subsequent to the approval of the petition, were not required of petitioning creditors, and were duplications of the services rendered by the attorney for the debtor. Such services are not compensable in this proceeding.

The trustee has been in full control and management of the debtor estate since his appointment by this court. The estate consists of a building having 52 apartments under one net lease, and 14 stores. For the period from October 19, 1934, to June 15, 1935, the trustee has collected a total gross rental of $22,891.52.

■ In determining what allowance should be made to the trustee in addition to what has been stated, the following from Bailie et al. v. Rossell (C. C. A.) 60 F.(2d) 806, 807, is of importance: "The controlling considerations in fixing a receiver's compensation are the fair value of the time and labor required in the performance of his duties, as measured by ordinary business standards, and the degree of activity, integrity and dispatch with which the work has been performed."

The Chicago Real Estate Board, in its schedule of commission rates, rule 29, section 3, article 2, declares that for property of this character the minimum charge for complete management service, such as would be required of an owner, should be not less than 5 per cent. of gross collections. With these principles as a guide, and considering that 80 per cent. of the premises are under a single net lease, the court is of the opinion that 5 per cent. of the gross amount collected, which the special master finds to be $22,891.52, is a reasonable charge for the trustee's services, and fixes that amount at $1,144.58, which is allowed.

■ Benjamin E. Cohen, duly appointed attorney for the trustee, requests an allow-

ance. He is entitled to receive reasonable compensation from the estate for services rendered to the trustee in the preservation and prosecution of the trust estate, including court appearances involving the trust property. The special master has reported that a reasonable charge for this service is the sum of $965.63, which is allowed. A request for an allowance for services rendered in the examination of the various plans of reorganization and attendance on the hearings thereof before the master is denied.

█ The firm of Taylor, Miller, Busch & Boyden, representing a nondepositing bondholder, seeks an allowance of $200 for services rendered in the examination of the debtor's plan resulting in accepted modifications of debtor's amended plan. The special master has found that such services were beneficial to the estate, and that the sum of $200 is a reasonable charge therefor, which sum is hereby allowed.

An order may be presented in conformity herewith.

### Supplemental Opinion.

In an opinion in this cause, bearing date October 24, 1935, the court reserved for further ruling the applications of the bondholders' committee and others for the allowance of fees and expenses. In this supplemental opinion the court will cover the matters heretofore reserved.

The bondholders' protective committee and its attorneys, as well as the Chicago Title & Trust Company, are asking for allowances. The petitions for allowances were referred to a special master to take the evidence and to report with recommendations. The master filed his report. On the motion of the Chicago Title & Trust Company testimony, so far as pertinent, taken in another proceeding, is to be considered on the final hearing of its application in this case, together with the special master's report. The matter now comes up on the report of the special master and the testimony taken in the other proceeding.

The Chicago Title & Trust Company was named trustee in the trust deed securing a bond issue of the debtor in the aggregate sum of $425,000, as well as the trustee in other bond issues sold by or through Lackner, Butz & Co., the house of issue. Prior to the default of the debtor, which occurred on January 1, 1933, the Chicago Title & Trust Company cooperated in the organization of a voluntary bond-

holders' protective committee for the protection of the bondholders of all Lackner and Butz issues. Under the provisions of the bondholders' protective agreement, the Chicago Title & Trust Company was designated the depositary for the bonds. It was also employed by the committee to render secretarial and clerical services to the committee. Under the provisions of the trust deed, concerted action of 20 per cent. of the unpaid and outstanding bonds was necessary in order to institute foreclosure proceedings. Upon default, communication was sent to the bondholders of the debtor requesting the deposit of their bonds with the depositary. The depositary accepted $247,600 in principal amount of bonds, approximately 59 per cent. of the issue, and issued 214 certificates of deposit. Upon demand of the bondholders' protective committee, the Chicago Title & Trust Company, as trustee, filed a bill to foreclose the trust deed in the circuit court of Cook county, Ill. No proofs were ever offered on the bill to foreclose. Thereafter a creditors' petition was filed under section 77B, 11 USCA § 207, resulting in the confirmation of a plan of reorganization. The plan, as finally adopted and confirmed, was the result of the joint services of the attorney for petitioning creditors, the attorney for the debtor, and the attorney for the bondholders' protective committee.

The Chicago Title & Trust Company has, since April 27, 1933, acted as depositary for and has rendered secretarial services to the bondholders' protective committee. The Chicago Title & Trust Company, by its organization and experience, was well equipped to render such service. In the discharge of its duty as depositary and secretary, it furnished office space, office machinery and equipment, and a trained personnel, including the services of its executive officers and financial experts. It set up books and records, conferred with bondholders, and held numerous conferences with members of the committee and the attorneys for the committee. This service also included the making of appraisals and re-appraisals, correspondence with bondholders, assembling from the various departments of the Chicago Title & Trust Company, and presenting data for consideration at committee meetings with reference to the valuation of the properties, tax questions, income and rental problems, and management operations. This service also included keeping books of ac-

count on committee operations and maintenance of books and records for the committee. Subsequent to filing the petition under section 77B, the Chicago Title & Trust Company furnished secretarial services with respect to negotiations for the proposed reorganization and, through attorneys, assisted in consummating the plan of reorganization.

The same department, equipment, and personnel were used in at least ninety similar Lackner-Butz issues.

The supplemental evidence relates largely to the reasonableness of the rates charged for depositary and secretarial services covering the whole period of service from the deposit of the bonds to the final decree in the reorganization case. The contention is made that the rates fixed by the Corporate Fiduciaries Association should govern.

In order to determine to what extent the services of the bondholders' protective committee, the Chicago Title & Trust Company, as depositary and secretary, and their respective attorneys, are chargeable to the debtor estate, resort must be had to the provisions of section 77B. Section 77B (i), 11 USCA § 207 (i) provides in part as follows: "And the judge shall make such orders as he may deem equitable for the protection of obligations incurred by the receiver or prior trustee and for the payment of such reasonable administrative expenses and allowances in the prior proceeding as may be fixed by the court appointing said receiver or prior trustee."

Obviously, the terms of the trust deed dictated the method by which bondholders might institute foreclosure proceedings. In the absence of any provisions in the trust deed, there is no provision under the laws of the state of Illinois whereby the court, in the foreclosure proceeding, had the power to allow fees to be paid from the mortgage estate to bondholders' committees, their depositaries, secretaries, or attorneys. Compensation for such services performed by the bondholders' protective committee, its depositary and secretary, and their attorneys, is not allowable as administrative expenses in a "prior proceeding" under section 77B (i).

If compensation is to be allowed from the debtor estate to the above parties, it must be by virtue of section 77B (c) (9), 11 USCA § 207 (c) (9), which, so far as pertinent, reads as follows: "The judge * * * may allow a reasonable compensation for the services rendered and * * * for the actual and necessary expenses incurred in connection with the proceeding and the plan by * * * depositaries, reorganization managers and committees or other representatives of creditors or stockholders, and the attorneys or agents of any of the foregoing and of the debtor."

The relief contemplated by section 77B of the amended Bankruptcy Act is relief to an involved debtor. Such relief cannot be accorded to it if, on reorganization, its estate is burdened with the payment of large and excessive fees and administration expenses. Fees and administrative expenses in bankruptcy and insolvency litigation must be held down to a minimum consistent with fairness and equity to all parties who have contributed to the presentation of the res and its administration for the common benefit. When, therefore, the judge is authorized to make allowances for expenses "incurred in connection with the proceedings and the plan," the words must be given a construction in harmony with the principles above stated. While the words "proceedings" and "the plan" have different connotations, yet, so far as the allowance of expenses are concerned, such expenses must have been "incurred" in or in contemplation of the proceeding by which some scheme of reorganization was consummated. The "proceeding" mentioned can mean nothing more than the proceeding instituted under section 77B. The words "the plan" seem to have been used deliberately to deprive the court of any power to allow expenses except in connection with the plan formulated and approved in the section 77B proceeding. Any other construction would open wide the door to the allowance of undefined, excessive, and extravagant expenses not connected remotely or directly with any reorganization under section 77B. Congress never intended the District Judge to exercise so wide a discretion.

The court must reject as untenable the contention of counsel for the committee and its depositary that the court may allow as administration expenses under section 77B (c) (9) compensation for the committee members as well as compensation and expenses to the depositary and secretary of the committee for all services from the inception of the committee to the final decree in the reorganization case.

Creditors, in the absence of special contract with their debtors, assume the expense of prosecuting and collecting their debts. In the instant case they were persuaded that this could best be accomplished by their joint action. In receiving the deposit of bonds, in making appraisals, in holding conferences and writing letters to bondholders, in instituting the foreclosure proceeding, and in practically all the other work performed before the commencement of the section 77B proceeding, the committee and its depositary were performing services in the interests of the depositing bondholders. The debtor's estate cannot be burdened with such expense.

It is contended that the debtor's reorganization was made possible by the co-operation of the bondholders' committee; that thereby the debtor was able to conclude a speedy reorganization and, in addition, was saved the expense of securing the consents which the committee caused to be voted to the final plan. It is admitted that the work and expense of assembling the bondholders was completed long before the adoption of the section 77B amendment, and that the general purpose in assembling the bondholders, in the first instance, was the protection of their rights under the trust deed and in the foreclosure action. Nevertheless, it is urged that the committee's services also inured to and were beneficial to the debtor's reorganization, and that therefore their fees and expenses in assembling the bondholders should be considered as services rendered and expense incurred in connection with "the proceeding and the plan," and compensated accordingly.

The answer to these contentions is that the work so performed was primarily to the benefit of the depositing bondholders and evidently contrary to the wishes of nondepositing bondholders and other creditors of the debtor. It may well be contended that nondepositing bondholders, constituting 41 per cent. of the total issue, after considering the unprecedented chaotic condition of the realty market, were not in sympathy with the methods employed by the bondholders' committee and were content to let the debtor remain in possession after its default, thereby eliminating the burden and expense to the estate resulting from the foreclosure proceeding. What was done prior to the section 77B proceeding was to the interest of the depositing creditors and they must bear their own expense.

It is further urged that the fees and expenses of the committee should be allowed because the plan so provides. The court, before confirming a plan of reorganization, must be satisfied that the plan is fair and equitable and does not discriminate unfairly in favor of any class of creditors or stockholders. Section 77B (f) (1), 11 US CA § 207 (f) (1). Without further comment it is apparent that any allowance to a bondholders' committee for services rendered prior to a section 77B proceeding would unfairly discriminate, decrease the assets of the estate, and be prejudicial to the rights of other creditors of the debtor, including nondepositing bondholders. The court holds that no compensation or item of expense can be allowed from the assets of the debtor estate to bondholders' committees for services rendered prior to, and not in contemplation of, a section 77B proceeding.

■ Beneficial services were rendered by the committee in connection with the debtor's reorganization, as reported by the special master. Services rendered in connection with the actual proceeding and the plan are compensable, for which the court may award reasonable compensation, from the assets of the debtor estate. In determining what is reasonable compensation, the court considers that the committee, over the same period of time, with the same facilities, rendered similar services in approximately ninety similar Lackner-Butz issues. For their services in connection with 214 certificates of deposit, the following sums are allowed, which the court finds to be reasonable:

(1) To Henry G. Barkhausen et al. comprising the bondholders' protective committee, for their advice, attendance at conferences, resisting petitioner's plan of reorganization, their advice and counsel in the formation of debtor's amended plan, their advice and services with reference to the release of the second mortgage, attendance by one of their members before this court and its masters on the hearing on the plans, and all other services, the total sum of $750.00

■ (2) To the Chicago Title & Trust Company, as depositary, for its complete services in this proceeding, in the exchange and delivery of the new securities. Such services are clerical in na-

566

Total brought forward $750.00
ture, and the court allows the sum of $1 per certificate, or the total sum of ........................ 214.00

■ (3) To the Chicago Title & Trust Company:

(a) For their complete past secretarial services to the committee, in connection with this proceeding and the plan, consisting of correspondence with the bondholders, making of appraisals, and assembling data for the committee ............ $750.00

■ (b) For their future secretarial services and expense with reference to the exchange of the securities, which services are clerical, the sum of $1 per certificate, or... 214.00

Total .................... $964.00

All other requests of the committee and its depositary and secretary are disallowed.

■ Butz, Von Ammon & Marx ask an allowance for services as attorneys for the bondholders' protective committee. This firm was employed in this proceeding and rendered valuable legal services herein from September 15, 1934 (the date the petition was filed) continuously to the date of the confirmation of the plan. The services to which such petitioners are entitled to compensation out of the debtor estate include the following:

Examination of the petition, conferences with the attorneys for the petitioning creditors and the attorneys for the debtor corporation, conferences with the bondholders' protective committee, appearances in court upon the appointment of temporary and permanent trustees, examination and taking an active part in the resistance of the plan proposed by the petitioning creditors, examination of receiver's reports and accounts, securing entry of an order authorizing the trustee under the trust deed to file a bulk claim on behalf of the bondholders, securing an order authorizing the bondholders' protective committee to file a claim on behalf of the depositing bondholders, collaboration with the debtor's attorney and the attorney for the petitioning creditors in the formation of an amended plan for the debtor, appear-

ances before the District Court and Master Herriott on the hearings on said plan, and participation in the proceedings eliminating the $80,000 junior trust deed from the proceeding.

The court fixes the reasonable value of such services at $2,037.50, which sum is allowed.

■ Schwartz & Cooper represented the debtor in this proceeding and are entitled to compensation out of the debtor's estate. These services consisted of investigating the affairs of the debtor, preparing and submitting the debtor's plan, the attendance of Mr. Schwartz throughout the various stages of debtor's reorganization. The special master has recommended that a reasonable charge for the services set forth in the petition is the sum of $4,200, which the court allows.

■ The Chicago Title & Trust Company requests an allowance for its services and expenses as trustee under the trust deed. Petitioner was designated as trustee May 15, 1927 and since that time has acted as such. As trustee it maintained adequate books and records, answered inquiries by mail and telephone, but performed no substantial duties until May 5, 1933, when demand was filed and the bill of foreclosure was presented for its signature and later filed. It employed attorneys to represent it in the legal phase of the foreclosure proceeding. Aside from the cancellation of a unit lease, its services were largely clerical in nature and should be compensated for on that basis. The court fixes the reasonable value of such services at the sum of $500. As trustee it incurred expenses for filing fees, abstract examination, sheriff's fees, and publication costs in the sum of $559.40, which are allowed in that amount.

■ Butz, Von Ammon & Marx request an allowance for legal services to the trustee in the foreclosure proceeding in the state court.

Mr. Joseph H. Lawyer appeared and testified that his firm represented the Chicago Title & Trust Company, as trustee, in the state court foreclosure proceeding; that in April, 1933, the issue was referred to the bondholders' protective committee for action; that after examination of the files and ascertainment that the committee had acquired 20 per cent. of the bonds to institute foreclosure proceedings, he caused notice to be served upon the debtor corporation for the default that existed; that as attorney for the committee, he notified

the trustee of the default and the election to accelerate the unpaid balance, prepared the bill of complaint in foreclosure, affidavit of unknown residence; submitted the bill of complaint to Chicago Title & Trust Company for signature, prepared the summons, filed the bill of complaint on May 5, 1933, case No. B-268212, entered order of consolidation in the foreclosure of the second mortgage, contested the fairness of the leases entered into by the receivers, ordered examination of title and information from the Chicago Title & Trust Company covering the filing of the foreclosure proceeding, examination of the same, filing an amended bill of complaint, summons issued thereunder, appeared in mechanic's lien action, examined the receiver's reports, and appeared in court when such reports were filed and allowances of fees asked for, and suggested that the receiver carry fire insurance in more than one company.

Mr. Lawyer testified that following the schedule of fees of the Chicago Bar Association, dated January 20, 1933, the minimum total fee provided for in an uncontested typical $420,000 bond issue foreclosure would be $8,150, and that the services rendered constituted three-fourths of the services which would have been rendered in a complete foreclosure proceeding.

While the Chicago Bar Association rules are intended as a guide to the courts in the allowance of fees, they are merely advisory and can have no application where the law is otherwise and judicial determination has found the policy for fee allowances in the federal courts.

The court finds that reasonable compensation to the attorneys for the trustee is the sum of $3,087.50, which is allowed.

Attached hereto is a summary of the allowances made in the first and supplemental opinions.

An order may be submitted in conformity with this supplemental opinion.

## Memorandum of Allowances.

| | | | |
|---|---|---|---|
| Leo S. Samuels [of Chicago, Ill.]: | | | |
| Attorney for petitioning creditors | Fees | $3,000.00 | |
| | Exp. | 134.06 | $3,134.06 |
| Francis A. Lackner: | | | |
| Employee of petitioning creditor | Fee | | 60.00 |
| Howard K. Hurwith: | | | |
| Trustee under section 77B proceeding | Fee | | 1,144.58 |
| Benjamin E. Cohen [of Chicago, Ill.]: | | | |
| Attorney for Trustee Hurwith | Fee | | 965.63 |
| Taylor, Miller, Busch & Boyden [of Chicago, Ill.]: | | | |
| Attorneys for intervening creditor | Fee | | 200.00 |
| Chicago, Title & Trust Company: | | | |
| (1) As trustee under trust deed | Fee | 500.00 | |
| | Exp. | 559.40 | 1,059.40 |
| (2) As depositary for bondholders' protective committee | Fee | | 214.00 |
| (3) For past secretarial services to bondholders' protective committee | Fee | | 750.00 |
| (4) For future secretarial services to bondholders' protective committee | Fee | | 214.00 |
| Butz, Von Ammon & Marx [of Chicago, Ill.]: | | | |
| (1) Attorneys for trustee under trust deed | Fee | | 3,087.50 |
| (2) Attorneys for bondholders' protective committee | Fee | | 2,037.50 |
| Schwartz & Cooper [of Chicago, Ill.]: | | | |
| Attorneys for debtor | Fee | | 4,200.00 |
| Henry G. Barkhausen et al.: | | | |
| Bondholders' protective committee | Fee | | 750.00 |