In re DAVISON CHEMICAL CO.

No. 8038.

District Court, D. Maryland.

Feb. 27, 1936.

824

House, Holthusen & McCloskey, of New York City, and James U. Dennis, of Baltimore, Md., for Cray, McFawn & Co.

Piper, Carey & Hall, of Baltimore, Md., and Milbank, Tweed, Hope & Webb, of New York City, for E. J. Quintal et al., Reorganization Committee.

Brown & Brune, of Baltimore, Md., for Charles B. Gillett et al., Protective Committee.

Armstrong, Machen & Allen and Maloy, Brady & Yost, all of Baltimore, Md., for T. Nelson Strother et al., Protective Committee.

Clarke & Allen, of New York City, for Griswodl et al., Stockholders' Committee.

France, McLanahan & Rouzer, of Baltimore, Md., for Equitable Trust Co., trustee.

J. H. LeRoy, Jr., of Elizabeth City, N. C., for J. H. LeRoy, Sr., one of the receivers of Eastern Cotton Oil Co.

Kenneth C. Royall, of Raleigh, N. C., for receivers of Eastern Cotton Oil Co. and Davison Chemical Co.

Larry I. Moore, of New Bern, N. C., for Davison Chemical Co.

M. B. Simpson and P. W. McMullan, both of Elizabeth City, N. C., and Pickrell & McDonald, of New York City, for receivers of Eastern Cotton Oil Co.

Jay V. Champion, of Norfolk, Va., one of the receivers and trustees of Eastern Cotton Oil Co., in pro. per.

Chester F. Hockley, of Baltimore, Md., one of the receivers and trustees of Eastern Cotton Oil Co., Davison Chemical Co., and Davison Realty Co., in pro. per.

Henry E. Treide, of Baltimore, Md., one of the receivers and trustees of Da-

vison Chemical Co. and Davison Realty Co., in pro. per.

G. Ridgely Sappington, of Baltimore, Md., for trustees of the debtor, Davison Realty Co., and one of counsel of the trustees of Eastern Cotton Oil Co.

James U. Dennis, George M. Brady, and Hilary W. Gans, all of Baltimore, Md., special counsel for receivers and trustees of Davison Realty Co.

Sylvan Hayes Lauchheimer, of Baltimore, Md., for Davison Chemical Co., Davison Realty Co., and Eastern Cotton Oil Co.

R. H. Kelley, of Houston, Tex., for receivers of Davison Chemical Co. et al., in ancillary proceedings in Texas.

Knight, Thompson & Turner, of Tampa, Fla., for receivers of Davison Chemical Co. et al., in ancillary proceedings in Florida.

Tazewell Taylor, Sr., of Norfolk, Va., for receivers for Eastern Cotton Oil Co., and for trustees of Eastern Co.

CHESNUT, District Judge.

The subject now before the Court is the allowances to be made to receivers, trustees, attorneys, committees, and depositories in the reorganization of the Davison Chemical Company, which includes therein also the reorganization of its subsidiaries, the Davison Realty Company and the Eastern Cotton Oil Company, and also receivership expenses of all three of these companies. The total amount asked for, excluding allowances previously made on account in the receivership proceedings, is the very large sum of nearly $500,000. It is the purpose of this opinion to state the reasons why the total allowances to be made will be very much less than this amount, and at the same time to state briefly the reasons for the amounts of the allowances as made to the several parties claimant.

The large amount that is asked for is explainable partly at least by the following considerations: (1) The services rendered for which compensation is asked include the operation of three separate receiverships and this separate reorganization proceeding involving the three corporations; (2) most of these activities have extended over a period of two or three years respectively; (3) some thirty parties are asking compensation, and (4)

the compensation in the amount asked for seems in most cases to have been based on what the parties thought would be reasonable charges against a solvent going concern, without giving sufficient consideration to the fact that the reorganized companies are financially embarrassed and if not actually bankrupt, were insolvent or nearly so.

The authority and duty of the court to fix and determine such allowances is contained in the recent Act of Congress known as section 77B of the Bankruptcy Act, subdivision (c) (9) of which provides: The judge "may allow a reasonable compensation for the services rendered and reimbursement for the actual and necessary expenses incurred in connection with the proceeding and the plan by officers, parties in interest, depositaries, reorganization managers and committees or other representatives of creditors or stockholders, and the attorneys or agents of any of the foregoing and of the debtor, but appeals from orders fixing such allowances may be taken to the Circuit Court of Appeals independently of other appeals in the proceeding and shall be heard summarily."

The policy of this court in a somewhat similar case (In re Kelly Springfield Tire Company, 13 F.Supp. 724, 729), in applying this statutory provision was stated as follows:

"It will be noted that the classes of parties or persons to whom compensation for services and reimbursement for expenses may be allowed is very comprehensive but nevertheless compensation for services 'must be reasonable' and reimbursement is limited to 'actual and necessary expenses incurred in connection with the proceeding and the plan.' In interpreting what is 'reasonable' compensation for services it is the view of the judges of this Court, as heretofore expressed in this and other cases, that, as the purpose of this new section of the bankruptcy law is for relief of financially embarrassed debtors, its spirit should be considered that of economy in administration. Pursuant thereto it has been the announced policy of this Court that the amount of such allowances must be *moderate* rather than *liberal*, in the interests of the parties affected, but nevertheless *just* allowances must be made to those who have per-

formed services which have inured to the benefit of the parties in interest." Note 1.

The numerous allowances here requested may be classified as follows: (1) Expenses of the reorganization proceedings proper; (2) current expenses of operation of the receivership of the Davison Chemical Company and the Davison Realty Company in this court; (3) extraordinary receivership expenses in litigation consequent upon controversies arising precedent to the receivership, and (4) allowances made to receivers and counsel in the receivership of the Eastern Cotton Oil Company in the Eastern District of North Carolina.

I will consider the several petitions falling within the particular classes in the order above stated:

Each of the several claimants has filed a petition in this case (many of them quite lengthy) reciting the services for which compensation is asked. Notices by publication and by mail were also given to all parties in interest, including stockholders and creditors, that these petitions for allowances were to be considered on February 10, 1936. On that day and the following days of February 11th and 12th, the court gave a hearing to all parties who desired to be heard. Most of the claimants appeared and testified orally with respect to their several petitions. In all, twenty-four witnesses were heard and thereafter arguments of counsel were submitted with respect to several points of law. The so-called Reorganization Committee (hereinafter more particularly referred to) submitted an extended report on the petitions for allowances stating its views as to their reasonableness respectively. It is to be noted, however, that apart from this report and recommendations therein neither the reorganized corporation, nor any stockholder by counsel or in person, appeared at the hearing to assist the court with information or argument regarding the reasonableness of the several allowances. While I appreciate very much the information and expression of views given in the report and realize that it represents in entire good faith the views of the Committee and of their counsel in its preparation, I have not found it possible to follow the recommendations except in a few instances. Both the Committee and its counsel have themselves submitted requests for large compensation and while their report makes no recommendation as to their own allowances, I have not been able to accept their views as entirely disinterested despite their entire good faith. The result necessarily is that the court must make its own determination of what are reasonable allowances without the benefit of argument or substantial opposition with respect to the several matters requested.

In approaching the consideration of the respective allowances, there are certain general features of the whole matter that should be borne in mind. The relation of the Davison Chemical Company to its subsidiaries, and something of the financial history of the Chemical Company and the basis on which it was reorganized, were stated in an extended opinion of this court confirming its plan of reorganization in the case, filed November 26, 1935. While this opinion has not been officially published, it was printed and I believe was mailed by the trustees to creditors and stockholders. As bearing on the reasonableness of the allowances to be made in this case, it may be noted that the receivership of the Davison Chemical Company was what may be referred to as a comparatively successful operating receivership. The receivership began February 13, 1933. It was succeeded by the reorganization proceedings on December 18, 1934. Operations of the company continued until confirmation of the plan of reorganization and its consummation as of January 1, 1936. The gross receipts of the receivers and the trustees during the nearly three years of operation were more than $9,000,000. For the same period the operating profit (after payment of taxes, charges for depreciation and all other expenses except interest on debt) was $885,714, exclusive of dividends from subsidiaries. While the principal plant and business of the Chemical Company

Note 1: Recent cases in other districts dealing with the same subject matter are: In re Paramount-Publix Corporation (D. C.S.D.N.Y.) 12 F.Supp. 823; In re 2747 Milwaukee Ave. Bldg. Corporation (D.C.) 12 F.Supp. 557; In re Milwaukee Lodge No. 46 (D.C.) 12 F.Supp. 854; In re Memphis State R. Co. (D.C.) 11 F.Supp 682; In re Kentucky Power Corporation (D.C.) 11 F.Supp. 528; In re National Dept. Stores (D.C.) 11 F.Supp. 633; In re DeWitt Clinton Co., Inc. (D.C.) 11 F.Supp. 829; In re New Rochelle Coal & Lumber Co. (D.C.) 11 F.Supp. 830.

was located on the waterfront in Baltimore City, the Company had about forty subsidiaries and sub-subsidiaries requiring general supervision and management, extending through many of the States on the Atlantic seaboard. Prior to receivership its total consolidated capital assets as carried at book valuation exceeded $40,000,000 but the revaluation of its properties made by the trustees was in the sum of about $10,000,000 which, in turn, was approximately equivalent to its total outstanding indebtedness. The Eastern Cotton Oil Company, a subsidiary, had operations in Eastern North Carolina and near Norfolk, Virginia. Its assets as revalued by the trustees are about $1,000,000. It was in receivership in the Eastern District of North Carolina for about two years prior to its reorganization proceedings in this court.

The Davison Realty Company was formed to develop land adjacent to the plant of the Chemical Company in Baltimore City. It had a note issue of $1,565,000 guaranteed by the Chemical Company. Its receivership originated in 1933 and was consolidated with the receivership of the Davison Chemical Company. The noteholders of the Realty Company had a preferential status with respect to security for their notes in that they were practically the only creditors of the Realty Company, and could look to the assets of the Realty Company, consisting of a large tract of land, and some outstanding claims or choses in action of large nominal value, and they were also general creditors of the Chemical Company by virtue of its guaranty. The reorganization of the Chemical Company included also the reorganization of the Realty Company, and the reorganization took the form of the formation of a single new company with only one security issue, all common stock. The whole of the stock issue of the new company went to the creditors of the two companies, but in recognition of the preferential position of the creditors of the Realty Company, a larger proportion of the stock was issued to its creditors than to the direct creditors of the Chemical Company. Negotiations for the determination of the extent of the preference caused a very considerable part of the work done before the terms of the reorganization plan were finally agreed upon.

It is obvious that the three receiverships, and the separate reorganization proceedings, together with the numerous litigated cases, arising from controversies originating prior to the receivership, have necessarily required a large amount of legal work which must be justly compensated for but on a moderate and not a liberal basis.

It should here be added that without exception all the numerous claimants for allowances in this case, whether attorneys, receivers, trustees or bankers serving on committees, are leaders in their respective professions or occupations and the court believes and finds that all of them have performed their services in this case with diligence and competency. While some of the services by various committees and their counsel very considerably antedated the reorganization proceedings and plan, it is nevertheless true that in considerable part the services rendered for which compensation is asked were actually necessary for the formulation of the plan and its acceptance by a very large proportion (more than two-thirds) of all creditors of each class and by a majority of the stockholders of the Company. And it should be also observed that the nature and character of the services performed required lawyers and business men of experience and proficiency in this particular class of work. And in measuring what is just compensation to lawyers in private practice, it must not be overlooked that allowances to them are not all net profit, as they are obliged to maintain offices with substantial overhead expense for the rent, telephone service, associate lawyers and clerks.

I. I come now to deal with the several particular allowances requested. First as to those having relation to the reorganization proceeding and plan proper. The plan itself was filed on September 18, 1935. It is a printed document of 19 large pages. Intrinsically it bears evidence of the general and particular care with which it was drawn. It begins with a list of definitions of terms and names used, followed by an introductory statement as to the several receiverships and the previous reorganization proceedings, giving also a list of the amounts of indebtedness of the several classes and the stock issues of the several companies, a description of the new stock and of stock pur-

chase warrants, and the plan for distribution of the new securities, a pro forma balance sheet of the new Company, and the methods of participation in the plan, the provision for costs of administration and other allowances, the method of executing the plan, including powers of the Reorganization Committee, and an exhibit of a proposed loan agreement to the new Company with certain banks to supply additional working capital. With regard to "costs of administration and other allowances," the provision is as follows:

"All costs of administration and other allowances made by the Court, or made in any of the aforesaid receivership proceedings, shall be paid in cash by the Davison Trustees or Eastern Trustees out of the assets in their hands, or by the New Company or the New Eastern Company, when and in such amounts as the Court shall direct, subject to provisions of section 77B. All amounts to be paid by the New Company or the New Eastern Company under the Plan, and all amounts to be paid to committees, whether or not by the New Company, for services or expenses incident to the reorganization of Davison Chemical, Davison Realty or Eastern, shall be subject to the approval of the Court."

It is to be noted the plan expressly provides that these costs are to be paid out of the assets in the hands of the trustees or by the new Company and costs and allowances in prior receivership proceedings and to committees are expressly contemplated, all, however, subject to the provisions of section 77B (11 U.S.C.A. § 207).

There are four committees who ask for compensation for themselves, their counsel, and expenses in connection with the reorganization proceedings. They are as follows: 1. The so-called Reorganization Committee consisting of E. J. Quintal, Chairman, Charles B. Gillet, J. Edward Johnston and Henry B. Thomas, Jr. Their counsel was Mr. Eugene Southall of the New York law firm of Milbank, Tweed, Hope and Webb, and associate counsel in Baltimore were Messrs. Piper, Carey and Hall; 2. the so-called Gillet Committee consisting of Charles B. Gillet, Chairman, C. Prevost Boyce and Philip L. Poe, representing holders of Davison Realty notes. The attorney for this Committee was Mr. Hilary W. Gans; 3. a separate committee for Davison Realty Notes consisting of T. Nelson Strother, Alfred R. L. Dohme and C. T. Williams. Their counsel were Arthur W. Machen and George M. Brady; 4. Stockholders Committee consisting of B. Howell Griswold, Jr., Chairman, John W. Castles and Louis S. Zimmerman. Their counsel were Messrs. Clarke and Allen of New York City.

As to these committees it should be pointed out that they were volunteers so far as the court is concerned; that is to say, they were not designated or selected at all by the court but were substantially each and all self-constituted and respectively selected their own counsel. This is not to imply that the court was not from time to time aware of their existence or their activities nor to infer any disapproval thereof. Their services were indeed quite important in the interests of their respective security holders and to a material extent contributed to the formulation, acceptance and finally confirmation of the plan. In some respects the activities of some of the committees probably involved duplication of effort but there was, I think, sufficient reason and need for each of these several committees. The multiplication of committees, especially when there are two or more representing the same class of security holders, is undesirable and should be discouraged; but in this case each of the committees, with the exception of the Gillet Committee and the Strother Committee, represented different interests. Nor can I say in this particular case that these two committees, both representing Davison Realty notes, were unnecessary, because, while the interests of all the holders of the Realty notes were identical, the policies of the respective committees apparently differed materially at the outset. Some little further explanation of the several committees should now be made.

The so-called Reorganization Committee, was, I think, dominantly a bankers committee representing principally the point of view and attitude of the banking creditors of the Chemical Company which, in the aggregate, amounted to about $5,000,-000, or one-half of the whole indebtedness. The largest banking creditor was the Chase National Bank of New York and Mr. E. J. Quintal became Chairman of the Committee and perhaps naturally took the lead on behalf of the banks in forming a so-called Reorganization Committee in order to get some action in

the matter. Of the other members of the Committee, Mr. Henry B. Thomas, Jr., had been a vice president of the Baltimore Trust Company, a large banking creditor, and Mr. J. Edward Johnston, a Baltimore capitalist, was individually a substantial holder of Chemical Company notes. Mr. Charles B. Gillet was selected because he was Chairman of the principal committee of the Davison Realty noteholders. This Committee did not solicit the deposit of bonds and I think in entire good faith undertook the reorganization of the Chemical Company in what was intended to be a disinterested way for the benefit of all concerned. In selecting Mr. Gillet as a member, it was evidently the thought to give representation on the Committee to the holders of Davison Realty notes which represented a substantial but nevertheless minority interest among the creditors of the Chemical Company. However, as has been pointed out, a substantial part of the Davison Realty noteholders, in all about $200,000 in amount, did not regard Mr. Gillet or the Gillet Committee, as fairly representative of their policy and point of view. The other members of the Gillet Committee were Mr. C. Prevost Boyce, a member of a banking firm which with The Baltimore Company underwrote the Davison Realty note issue and Mr. Philip L. Poe. The Strother Committee was, therefore, formed to represent a minority of the Davison Realty noteholders who thought the Gillet Committee and the Reorganization Committee were more truly representative of the banking interests.

The Griswold Stockholders Committee was formed at the instance of probably the largest single stockholder of the Chemical Company, holding about 25% of all the stock. The representatives of this stockholder had in preliminary negotiations reached a substantial agreement with respect to the terms of the reorganization affecting the old stockholders of the Chemical Company and desired to present their views to other stockholders in support of the plan. In order to do this they had thought it desirable to ask some representative and entirely disinterested bankers, two in Baltimore and one in New York, to form a stockholders' committee to consider the plan and advise stockholders generally with regard to it. The Committee as thus selected consisted of Mr. Griswold, principal active partner in the old and well-known banking firm of Alex. Brown and Son of Baltimore, Mr. Louis S. Zimmerman, a vice president of the Maryland Trust Company, and Mr. Castles, of C. D. Barney & Co., of New York.

With regard to the determination of fair allowances in this proceeding to these several committees, the most important preliminary question to be decided is, first whether all the committees are entitled to allowances for compensation and expenses, and secondly, if so, what portion of their whole services should be compensated in this particular proceeding. With the exception of the Stockholders' Committee, the other committees were formed and a large part of their activities long preceded the filing of the plan in this court. Thus the activities of the Reorganization Committee began in November of 1934; the Gillet Committee was formed as early as May 4, 1933, and the Strother Committee was organized shortly thereafter. It would unduly prolong this opinion to review in detail the activities of these several committees. I am satisfied, however, from the evidence in the case that a substantial part, but by no means the whole of their activities, directly contributed to the formulation of the reorganization plan. For instance, the Reorganization Committee itself had to pass on many matters preliminary to the actual formulation of the plan. It has been brought to the attention of the Court that all the banking creditors were not at all times thoroughly agreed with respect to certain provisions of the plan. A very critical issue existed between the direct creditors of the Chemical Company and the Realty noteholders as to the basis for distribution to each of the new stock, and, as has been observed, there was not harmony and for a long time no unity of action between the Gillet Committee and the Strother Committee, as they differed in their policies with respect to the method of furthering the interests of the noteholders whom they respectively represented. Another important question related to the method of raising the necessary new working capital and the terms on which it was to be obtained. Counsel for the Strother Committee also desired some provision in the plan which would limit the freedom of sale by the banks of the stock in the new Company which they were to receive. Other questions and differences

doubtless arose and had to be settled. It is urged upon me, and I do not find it necessary to rule to the contrary, that these issues were only those that were natural and inherent in the situations and that they were necessarily the basis of negotiations which reached final agreement in the agreed plan of reorganization. However, if this be granted, I still think it remains true that some reasonable limit must be put in point of time to the activities of committees prior to the formulation of the plan. In administering this new statute, so comprehensive in its inclusion of classes of parties who may be compensated in the proceeding, the District Courts have so far not been in entire accord as to the extent to which there may properly be allowances for services of committees prior to the proceeding and plan. The language of subdivision (c) (9) does, however, limit the allowance to those that are reasonable, and the expenses to those that are "for the actual and necessary expenses incurred in connection with the proceeding and the plan." The "proceeding" itself clearly does not permit compensation for services prior to the preparation and filing of the petition for assumption of jurisdiction by the court under section 77B. But it is urged that it is often necessary or desirable to give thought and preparation to the plan long before the formal proceeding is actually filed. And it is urged that, as the statute expressly provides for the payment of expenses in prior receivership proceedings, and as it has been decided that acceptances to the plan given prior to the filing of the proceeding are valid when subsequently filed (see Campbell v. Alleghany Corporation, 75 F.(2d) 947 (C.C.A.4), therefore it is reasonable to compensate for services which, though performed prior to the proceedings, facilitate the formulation of the plan when subsequently filed in the proceeding. Note 2.

■ This view is not without weight, but if it is to be adopted it should not be pushed to an extreme. It may be difficult to state a formula which will fairly draw a hard and fast line in point of time for all cases but in every case the line must be drawn somewhere and it is my view that the services to be compensated in any particular reorganization proceeding ought to have a direct and proximate and not merely a remote relation to the formulation of the plan itself. More specifically as applied to this case, I am of the opinion that the activities of these several committees long prior to the actual work in formulating the plan should be chargeable to the interests which they respectively represent and not as costs of administration in the particular case. On the other hand, I think it equitable to make a reasonable allowance for such part of the services as directly related to the formulation of the plan itself, which properly can include conferences and negotiations of counsel for the respective interests in reaching an agreement as to the terms of the plan.

■ It should also be borne in mind that the plan as formulated was a plan for the reorganization not only of the Chemical Company but also of the Realty Company, merging the two into one new corporation. While the actual work of drafting the plan was thus cast on counsel for the Reorganization Committee, counsel for the Gillet Committee and the Strother Committee are also entitled to be considered in this connection because they did participate in joint conferences, all contributing to a harmonized and agreed result. In this view of the matter it is apparent that the final plan represented a joint activity of the several committees. It must, however, finally be observed that where there are numerous committees all working to a common end, and involving necessarily some duplication of effort, the total allowances to be made to them all should not in the aggregate be more than a reasonable and moderate amount. And this necessarily means that the several allowances must

Note 2: See in support of this view the opinion of District Judge Coxe in the Southern District of New York in Re Paramount-Publix Corporation 12 F.Supp. 823. And see, also, In re Bowman Biltmore Hotel Co. S.D.N.Y. November 26, 1935 [1], CCH. Bankruptcy Service, p. 3724; and In re Mortgage Security Corporation, 14 F.Supp. 711 (S.D.N.Y. April 11, 1935, CCH. 3400); In re Republic Gas Corporation, 14 F.Supp. 703 (S.D.N.Y. November 21, 1935). CCH. Par. 3721. Contra, see In re 2747 Milwaukee Ave. Bldg. Corporation (D.C.) 12 F.Supp. 557, 563; In re Milwaukee Lodge No. 46 (D.C.) 12 F.Supp. 854; In re Memphis Street R. Co. (D.C.) 11 F.Supp. 682.

[1] No opinion for publication.

be smaller than would be justified if the number had been less.

Taking now the concrete allowances to be made to the several committees, we come first to the allowance to the Reorganization Committee.

█ *Reorganization Committee:* This Committee requests an allowance of $30,000 for its four members, and reimbursement for itemized expenses of $2,601.05. Its counsel, Mr. Southall, of Milbank, Tweed, Hope & Webb, New York City lawyers, asks an allowance of $65,000 for services and $6,880.82 in reimbursement for actual and necessary expenses. I cannot make allowances so large as these. It is true they are not actively opposed by the new Company and it is said that Mr. Hockley, President of the new Company, has expressed himself as thinking them fair. I do not understand however that the new Board of Directors has itself passed upon any of the requested allowances. I must bear in mind that the allowances as made are to be paid by the new Company which means in effect, chargeable to all the stockholders of the new Company. It is a necessary though obviously not a pleasant duty of the court, to materially reduce allowances no doubt very honestly thought to have been earned by various gentlemen for their services but which seem in the judgment of the court to be clearly beyond the scale of compensation fairly allowable in a bankruptcy proceeding, where, as has been pointed out, the basis of allowances must be moderate and not liberal. And it may be observed that most of the allowances asked for might not be regarded as excessive if charged to a large and prosperous business enterprise, but become excessive in view of what I regard as the proper limitation and scope of time and subject matter for which the charges are made and when made to a new corporation which is hoping, as a result of a drastic reorganization, to succeed in rehabilitating an important business enterprise. Still again it is quite consistent with the practice and policy of this court, in a number of prior cases of this nature, to point out that allowances to bondholders and stockholders committees in these section 77B cases so far as the committees themselves are concerned, must be very moderate. And it must be borne in mind that the members of such committees for the most part are selected by virtue of their representative character in relation to groups of creditors or stockholders. Thus in this case, Mr. Quintal is a vice president of the Chase National Bank, largely and frequently employed in reorganization matters of this kind in which his bank is interested, and in this case he very frankly has told the court that any compensation received by him as a member of the Committee will not be retained by him personally but be ultimately payable to his bank. Mr. Henry B. Thomas, Jr., has not testified but it would seem inferable that his relationship to the Committee as a representative of a large banking creditor would be the same. Nor has Mr. J. Edward Johnston, a Baltimore capitalist, testified in the case but was individually interested as a large creditor. Mr. Gillet became a member of the Reorganization Committee by virtue of his being Chairman of the larger Realty Noteholders Committee. Unquestionably this Committee as a whole took a leading part in the formulation of the plan and necessarily held numerous meetings of the Committee and probably many conferences with representatives of other interests. As to the reimbursement of the Committee for expenditures, I would say, consistent with what has been observed as to the principles to be applied, some of the expenditures of the Committee could not be approved as charges in this case. Furthermore it is somewhat difficult in the absence of very detailed testimony as to each of these allowances to allocate them respectively as within or without the principle properly applicable. On the whole I consider that an allowance of $7,500 to this Committee, with no separate allowance for expenditures, will be reasonable.

█ The allowance to counsel for the Committee, Messrs. Milbank, Tweed, Hope & Webb, presents even more difficulty. I have personal knowledge from a dozen or more conferences off and on with Mr. Southall, the member of this firm who gave personal attention largely to this work, that his work was well planned and well executed and must have consumed a large part of his time with other office assistants. The formulation of the plan was an important and difficult piece of professional work which required a thoroughly competent and experienced lawyer to prepare. The several conflicting interests must also have required business experience in corporate financial work

and some measure of diplomacy to lead to a final harmonious result. Then again Mr. Southall has been charged to a large extent with the execution of the plan after the court proceedings resulting in its confirmation. On the other hand the extent of his time required was undoubtedly increased by the fact that being a New York lawyer he had to make numerous trips to Baltimore in connection with the matter and a large part of his disbursements were for traveling expenses to Baltimore and telephone charges which would have been avoided if a Baltimore lawyer had been selected by the Committee. He was selected because of his familiarity long before the present proceeding with the affairs of the Davison Chemical Company which he acquired as counsel for its largest single creditor, the Chase National Bank of New York. I am satisfied also that a very large part of the services for which the fee of $65,000 is asked covered activities as counsel for the banking creditors as a class, which very appropriately would have been rendered, rather than purely for the proceeding and plan itself. But even if the applicable principles were sufficiently elastic to cover all phases of his work comprehended in the charge as rendered, I would still think it too large for the work done in connection with a bankruptcy proceeding.

I have given careful consideration to the petition for this large allowance. It, and the exhibit therewith in the form of a diary memorandum of work done, must be read to understand both the volume of the work, and the nature of the particulars thereof. This will show (1) that from the time of filing the petition under section 77B in December, 1934, to the present, on very many days, in whole or in part, important attention was given by Mr. Southall and his office associates to various phases or incidents of the proceeding and the subsequently emerging plan; (2) but that much of the work done was by its nature, as indicated in the daily memoranda, rather of a financial legal nature, such as would be appropriate to giving financial legal advice to clients, to inform their judgments as to what kind of a plan they would approve, or on what terms, or whether a particular plan was possible, and there was much delay in filing the plan caused by the lack of complete cooperation of the banking creditors

during the summer of 1935, all of which entailed considerable work by counsel. This latter class of professional work should, I think, be compensated by the banks, as a class, rather than made a charge on the new Company, and therefore in effect paid by *all* the former creditors and stockholders. It is apparently true that the Reorganization Committee was not nominally constituted by the banking creditors as a class, but as already indicated, I think it must be considered as substantially acting for them, as it clearly originated with Mr. Quintal of the Chase National Bank. (3) The petition also shows a substantial amount of work that I think can be properly charged to the new Company directly, but not allowed for in this proceeding. Thus much of the work done after January 1, 1936, was directly for the new Company and should be paid for by it as a current expense, as also the contract of the new Company with Mr. Hockley, and the report of the Committee regarding these allowances in this case, and very probably other items. The final view that I take with regard to this allowance is that there should be charged to the new Company for this fee $30,000, and this represents such a reduced amount from that asked, I will also allow the whole of the bill for disbursements in the amount of $6,880.82.

■ As to the bill of Messrs. Piper, Carey and Hall, local counsel for the Reorganization Committee, the same principles largely apply. Their services extended from November, 1934, but it appears from their petition that their work was only of an advisory and confirmatory nature, and rather formal appearances at certain hearings. I make the allowance to them $1,500, plus their disbursements of $42.89.

■ *The Gillet Committee:* The members of this Committee are Messrs. Charles B. Gillet, Chairman, C. Prevost Boyce and Philip L. Poe. As has been pointed out, Mr. Boyce was a member of a banking firm which participated in the underwriting of Davison Realty notes. Mr. Poe had been associated with the same banking firm but was not directly interested in the note issue. Mr. Gillet was personally entirely disinterested in the matter and somewhat reluctantly consented to accept the Chairmanship of the Committee at the request of ·Mr. Thomas of the Baltimore Trust Company. Mr. Gil-

let's banking firm of Gillet and Company had been quite closely associated previously with The Baltimore Trust Company. Outside of his personal acquaintance and possible sympathy in the matter he was not directly interested in the Davison note issue. The work of this Committee has required unquestionably a large amount of his time and energy and he should be properly compensated therefor from some source. I will not undertake, however, to distinguish between the several members of the Committee in the final allowance to be made to them in this proceeding. That may be arranged among themselves. Mr. Boyce has not personally testified in the case and his particular interest may be assumed to be largely as a service that he would have wished to voluntarily render to the noteholders in view of his firm's original relation to the note issue. As has been pointed out, this Committee was formed on May 4, 1933, and solicited the deposit of the Davison Realty notes with the Maryland Trust Company as depository. An elaborate noteholders deposit agreement in conventional form was prepared evidencing the terms on which the notes were deposited. In section 11, printed page 11, the agreement provides that the Committee shall be entitled to reasonable compensation and reimbursement for expenses with a lien on the deposited notes therefor but limited to 5% of the principal amount of the notes deposited. The total principal amount of notes deposited with this Committee was $895,500. They ask for an allowance in the aggregate amount of $29,269 to cover services of the Committee, counsel fee, secretary and the depository and its counsel. The Committee has fixed this amount in accordance with the deposit agreement. It is further itemized as follows:

| | |
|---|---|
| "Compensation to members of Committee | $12,000 |
| Compensation to Secretary | 2,000 |
| Expenses | 6,700 |
| Counsel to Committee | 7,000 |
| Depository fee and expenses | 1,569" |

I am satisfied from an examination of the petition and the testimony of Mr. Gillet and other testimony in the case that the total compensation asked for by the Committee in accordance with the provisions of the deposit agreement is not, on the whole, unreasonable; but I am also fully satisfied that the scope of the activities of the Committee in duration of time and extent of subject matter is far beyond what should properly be charged in this reorganization proceeding.

I allow this Committee on account of compensation to its members and on account of all expenses, including counsel fee, to be distributed by them as they deem proper, the sum of $7,500. The balance of their bill as rendered should, I think, be chargeable directly to the depositing noteholders under the agreement. In this connection one of the depositing noteholders (B. W. Pizzeni &. Co.) has submitted by their counsel, contentions to the effect (1) that the total compensation and expenses of the Committee should be charged to the new Company. For the reasons already stated, I cannot agree to this. And (2) that the court should pass upon the reasonableness of the Committee's charge under the deposit agreement. In this connection reference is made to subdivision (f) (5) of section 77B, 11 U.S.C.A. § 207 (f) (5), which provides for confirmation of the plan if, among other things, "all amounts to be paid by the debtor or by any corporation or corporations acquiring the debtor's assets, and all amounts to be paid to committees or reorganization managers, whether or not by the debtor or any such corporation for services or expenses incident to the reorganization, have been fully disclosed and are reasonable, or are to be subject to the approval of the judge."

And also to the final part of subdivision (b), 11 U.S.C.A. § 207 (b), which reads:

"Provided, That the judge shall scrutinize and may disregard any limitations or provisions of any depositary agreements, trust indentures, committee or other authorizations affecting any creditor acting under this section and may enforce an accounting thereunder or restrain the exercise of any power which he finds to be unfair or not consistent with public policy and may limit any claims filed by such committee member or agent, to the actual consideration paid therefor."

Counsel for the Gillet Committee oppose this construction of these quotations from the Act and deny that the court is authorized to disregard or set aside the provisions of the deposit agreement in this respect. No term or provision of the agreement has been called to my attention as being of itself subject to criticism. Nor after hearing the evidence in the case

834

does counsel for this noteholder affirmatively dispute the reasonableness of the charges made by the Gillet Committee. As I have already indicated that I see nothing unreasonable in the charges as made, there would seem to be no occasion to discuss further the contentions of this noteholder.

 *The Strother Committee:* This Committee asks for only $4,500 for its three members, expenses of $399.77 and $7,500 for fee for its counsel. No member of this Committee has testified in the case but the attorneys for the Committee, Messrs. Arthur W. Machen and George M. Brady, have very fully submitted their views outlining the work and activities of the Committee. As already noted, the ultimate interests of the noteholders, whether represented by the Gillet Committee or the Strother Committee, were the same but their points of approach to the problem were different. The Strother Committee think the Reorganization Committee and the Gillet Committee were in personnel too closely identified with the bankers' interests. Without expressing concurrence in this view, I think there was in this case room for the separate Strother Committee and I think they are entitled to recognition for their contribution to the plan as ultimately agreed upon. The views of the Committee were evidently vigorously presented and pressed by their counsel. The final result as worked out for the benefit of the noteholders through the activities of the Gillet Committee and the Strother Committee, were of very great advantage to the Realty noteholders. The testimony is that the market value of the notes as a result of the proceedings in this court and the confirmation and execution of the reorganization plan, increased from about 20 to 90. This result represents a very valuable service to the Realty noteholders. Unfortunately the collection of full reasonable compensation by the Committee from the noteholders was not facilitated by a formal deposit agreement as was the case with the Gillet Committee. This, however, is a circumstance that I do not think can properly affect the allowances to be made to this Committee. The amount of bonds that they represented without deposit was something over $200,000. As in the other cases, I am satisfied that while this Committee by itself and its counsel represented a real contribution to the common result, the scope of their whole activities extend beyond the portion properly allowable in this case. I allow to this Committee therefore (including for itself, its counsel and its expenditures of $399.77) the sum of $6,000. I do not doubt that the noteholders who have received such substantial benefit from the services of this Committee and its counsel will be willing to further compensate them to a reasonable extent beyond the allowance herein made, which I think is all that should be charged against the new Company.

 *Stockholders' Committee:* None of the members of this Committee have personally testified in court. They suggest a compensation of $7,500 for the Committee and $500 for their Secretary and $108.11 for expenses; and their counsel, Messrs. Clarke and Allen, ask for a fee of $2,500 and $280.93 for expenses. So far as Messrs. Griswold and Zimmerman are concerned, I am sure that their services were rendered almost entirely from the standpoint of public service to a local enterprise rather than with the idea of compensation. It is said, however, that Mr. Castles of Barney and Co., of New York, spent a very considerable amount of time and activity in communicating with very widely distributed stock, which was mostly held in so-called street names with the real owners unknown and difficult to locate. The Committee carefully considered the provisions of the plan in the interests of the stockholders and suggested two amendments, one of which was adopted. Their activities resulted in cooperation with the creditors of the Davison Chemical Company in securing affirmative approval of the plan by a majority of the outstanding stock. If this had not been accomplished the procedure for reorganization would necessarily have been protracted with more expense, possibly of a substantial nature. The allowances to Messrs. Griswold and Zimmerman probably should be regarded more in the light of an honorarium than otherwise. Mr. Castles should be reasonably compensated for his time and services. I consider an allowance of $3,500 to the Committee to cover the personal services of its members and its expenditures, including compensation to its secretary reasonable. In addition thereto I allow for its counsel $1,500 and his expenditures of $280.93.

There are a few miscellaneous additional allowances that must be made in

connection with the reorganization expenses.

██ Mr. Sylvan Hayes Lauchheimer acted as counsel for the Davison Chemical Company, the Davison Realty Company and the Eastern Cotton Oil Company in the section 77B proceedings. He has testified as to his services in these cases. He felt it within his duty to examine the numerous papers in the proceeding and to attend quite a number of the hearings. Mr. Lauchheimer is a very experienced attorney in these matters. He asks an allowance of $1,500, which would not be unreasonable for a going concern but as the allowances in these cases have to be moderate and not liberal, I make the allowance to him $750.

██ The Equitable Trust Company as Trustee under indenture securing Davison Chemical notes, and Davison Realty notes, requests an allowance for compensation and expenses in the amount of $250, which I approve. Their counsel, Messrs. France, McLanahan and Rouzer, request $750, which I think should be allowed in the amount of only $350 in accordance with the principles herein throughout applied.

██ The Chase National Bank presents a bill as distributing agent under the plan of reorganization in the amount of $3,-109.04, which I allow, and the Baltimore National Bank as warrant agent under the plan of reorganization also presents a bill for $1,943.61, which I likewise allow.

II. *Current Receivership and Trusteeship Expenses of Davison Chemical Company and Davison Realty Company:* The receivership case affecting the Davison Realty Company was instituted March 15, 1933. The bill was filed by Cray, McFawn & Co., of Detroit, representing certain noteholders through its attorneys, Messrs. House, Holthusen and McCloskey of New York, and Mr. James U. Dennis of Baltimore. This was a very elaborate bill of complaint evidently prepared after quite extensive examination and preparation and charging at considerable length corporate mismanagement and other alleged wrongs to the noteholders in the issuance of securities and subsequent financial management of the corporation. After some time, by consent of all parties in interest, the proceeding was consolidated with the then pending prior receivership of the Davison Chemical Company and to avoid duplication of administration expenses, Messrs. Treide and Hockley, receivers of the Chemical Company, were also made receivers of the Realty Company. But as in certain particulars there was an apparent conflict of interests between the Chemical Company and the Realty Company in their respective corporate entities, likewise by agreement the court appointed Messrs. James U. Dennis, George M. Brady and Hilary W. Gans, as special counsel to advise and act for the receivers of the Realty Company in the matters in controversy. These attorneys actively performed their duties in this respect and have filed at least two important suits and have prosecuted one successfully through this court and the Circuit Court of Appeals. Miller v. Hockley, 80 F.(2d) 980.

██ The attorneys for Cray, McFawn & Co. have presented a request for allowance for their services in the very large sum of $25,000 for fee, and expenses in the amount of $2,794.21. Mr. Pinkham, a member of the New York firm, testified as a witness, however, very candidly and stated that after further consideration he realized that much the greater part of their services were not compensable in this proceeding. So far as their services relate to matters prior to the filing of the bill of complaint for a receiver of the Realty Company is concerned, I am clearly of the opinion that they cannot be compensated for in this proceeding. It appears that Mr. Cray at one time became a member of the Gillet Committee but subsequently withdrew. I think that compensation to counsel for Cray, McFawn & Company must be limited to the work of preparing and filing the bill of complaint. Mr. Dennis' work as special counsel for the receivers will otherwise be compensated. I allowed to counsel for the creditors filing the bill of complaint against the Davison Chemical Company some years ago the sum of $1,000, which was about the usual allowance in such matters in this court. As, however, the bill against the Realty Company was much more elaborate and required substantial preparation I will allow to Messrs. House, Holthusen and McCloskey, and Mr. James U. Dennis for this service as a receivership expense of the Davison Realty Company to be paid by the new Company, the sum of $1,500. I cannot allow their expense bill.

Messrs. Treide and Hockley were receivers and trustees of the Davison Chemical Company for approximately three years, and of the Realty Company for nearly the same time. Messrs. Hockley and Champion (the latter formerly a receiver of the Eastern Cotton Oil Company in North Carolina) were made trustees of the Eastern Cotton Oil Company in this court under section 77B.

■ The original appointment of Messrs. Hockley and Treide as receivers of the Chemical Company was made at the request of the parties in interest. They performed their services, according to my observation, diligently, faithfully and efficiently. Much of the comparative success of the receivership and of the subsequent reorganization is due to their energies and abilities. I think it is commonly recognized by all parties in interest that Mr. Hockley's experience, energy and comprehensive grasp of the major business aspects of the Davison Chemical Company was the most important factor leading to its successful reorganization. The various capacities in which he has served have required almost his whole time and attention for the better part of three years. He was president of Bartlett, Hayward Company of Baltimore and a man of superior executive experience and ability. His value to the whole enterprise is evidenced by the creditors who, as stockholders of the new Company have engaged his services, according to the testimony, at the annual fixed salary of $50,000. With this arrangement the court in this proceeding obviously has no concern. It does, however, serve to indicate that his services are regarded as of great value and entitle him to substantial compensation. He requests in this proceeding compensation at the rate of $30,000 a year for his services in the several capacities mentioned. As an incident to the Davison Chemical Company he was also receiver of the Silica Gel Corporation of which Davison was a large creditor; and for nearly three years' services in that capacity he was allowed $15,000. In addition thereto he has received already on account of his services in these cases $31,700. The Reorganization Committee approves the allowance as requested. On the whole I think it is not unreasonable, but bearing in mind that this is a bankruptcy proceeding, I think there should also be deducted the $15,000 received from the related Silica Gel

receivership, leaving a balance now payable to him of $43,300. This will also include his services as an Eastern Cotton Oil Company trustee.

■ Mr. Treide has also, as above stated, performed efficient and faithful services to the receiverships and trusteeships. He has already received on account $23,300 and asks $30,000 more. The Committee also approves this. Prior to the receivership he was vice president and president for a time, of the Davison Chemical Company at a stated salary of $30,000 a year. In that capacity, however, he had the principal executive responsibility which during receivership was largely shared by Mr. Hockley. I think that compensation to him at the rate of $15,000 a year for three years, or $45,000 in all subject to the credit of $23,300, is reasonable. I therefore allow him additionally for his services to date $21,700. He gave his full time to the work.

As bearing on the reasonableness of these expenses, it is not inappropriate to note that the allowance made to Messrs. Hockley and Treide for the several capacities in which they have served is only at the rate of $40,000 a year, while similar executive services to the Chemical Company alone for the year prior to the receivership amounted to $85,000. This is illustrative of the general policy of this court as to substantial reduction of operating expenses of receiverships as contrasted with prior executive salaries.

■ Mr. G. Ridgely Sappington has acted as counsel for Messrs. Hockley and Treide in their several capacities as receivers and trustees for a period of approximately three years. His appointment was requested by them on account of his familiarity with the affairs of the Davison Chemical Company acquired during his professional representation of that Company for about a year prior to receivership, after the management of the Company had been substantially reorganized upon the insistence of the banking creditors. He was also attorney for Mr. Hockley as receiver of the Silica Gel Corporation. He has received on account heretofore allowances made subject to exception, and not objected to, payments of fees aggregating $35,000 in the Davison Chemical Company, and $10,000 in the Silica Gel. He asks an additional compensation of $85,000 and this sum is regarded as reasonable by

the Reorganization Committee. I regret that I am unable to make such a large allowance as I regard it as entirely too liberal and not moderate, in accordance with the principles already stated. It is, however, true that the range and extent of Mr. Sappington's professional services in this whole matter greatly exceed that of any other attorney who has petitioned for compensation. I am familiar of course with the very continuous services which he has rendered to the trustees and receivers. As bearing on what is a reasonable compensation, the following facts are relevant: Mr. Sappington's law office includes a suite of rooms in the Baltimore Trust Building and he has two junior associates and two or three clerks. His office expense exceeds $10,000 a year. His office force has been at the service of the receivers and trustees constantly for a period of nearly three years. The numerous and complicated business affairs of the several corporations have required daily attention in some form during this period. He estimates that exclusive of the attention to Silica Gel, approximately one-half of his whole time personally has been required in the service, and the whole of the time of one of his associates for Davison and Silica Gel. For the year preceding the receivership his total compensation in fees from the Davison Chemical Company for about the same proportion of his time was about $32,-000. He has conducted for the receivers and trustees seven or eight litigations involving inherited controversies, two at least of which have been of major importance. In one he was successful in establishing a claim of the Davison Company against the Silica Gel Corporation (the latter in this respect being represented by independent receiver and counsel appointed by the court) in the amount of $3,615,107.98, and defending the same on appeal (see Baltimore Daily Record February 11, 1934; Duffy v. Treide (C. C.A.) 75 F.(2d) 17). Property valued at about $250,000 has been realized on this account. In another case he successfully defended a claim of about $2,-000,000 of the Davison Chemical Company against the Eastern Cotton Oil Company (see Baltimore Daily Record, Oct. 21, 1935). He gave supervisory attention to a damage suit against the Davison Chemical Company, in which $1,500,000 was claimed as damages and negotiated a settlement of this claim for $50,000 in cash and $125,000 in established credit. This claim was locally defended in the North Carolina courts by Messrs. Royall and Moore, more particularly hereinafter referred to. Other litigations conducted by Mr. Sappington are specifically referred to in his testimony in this case. Some of them were appealed. See Bowen v. Hockley (C.C.A.) 71 F.(2d) 781, 94 A.L.R. 856; Hockley v. Wilson (C.C.A.) 70 F.(2d) 108. Most of these litigations arose from controversies arising prior to receivership and compensation for his services therein might more properly be classified as extraordinary rather than current services to the receivership. For some years past he has been actively engaged in corporate financial work in representation of banks and other corporate enterprises. His services have been constant, industrious and efficient. He is fairly entitled to substantial compensation for this work and it would be unjust not to allow it because it has not only been actually necessary in the conduct of the business of the Chemical Company but has directly inured to the benefit of the stockholders of the new Company. Nevertheless in measuring the compensation, consideration must fairly be given to the fact that the services were rendered to a financially embarrassed corporation and his office has been very constantly occupied with a volume of business during a period when lawyers as a class have not been overburdened with compensatory professional work. And it must also be considered that the service, although constant and extensive, has not, as in the case of the receivers, occupied the time and attention of his office force exclusively, but only approximately half of the whole time, leaving opportunity for other substantial professional activity; and furthermore as a result of the reorganization, he continues as counsel for the new company.

In view of the fact that his office with its attendant expense has been so largely dedicated to the readiness to serve and the actual service of this matter for a period of three years, I think the measure of compensation on a moderate basis is properly not less than $25,000 a year or $75,000, including the Silica Gel work, against which should be credited the allowances heretofore made in the amount of $45,000, leaving as a further allowance to be made the sum of $30,000.

■■ *Ancillary Receiverships:* There were two ancillary receiverships of the Davison Chemical Company, one in Texas and one in Florida. Mr. Robert H. Kelley of Houston, Texas, acted as attorney there, and has been paid a fee of $250 on account. His petition asks·for further payment of $250, which amount is approved by the Committee, and I therefore allow it.

Messrs. Knight, Thompson and Turner, attorneys of Tampa, Florida, acted similarly in the ancillary receivership there. They have been paid $500 on account and now ask for $50 more for recent services in connection with the reorganization. The amount is approved by the Reorganization Committee and is allowed.

■■■ The execution of the reorganization plan required the formation of new corporations known as the Davison Chemical Corporation and the Eastern Cotton Oil Corporation. The execution of the plan required numerous transfers of real property by deed. I have heretofore observed in this and other similar reorganization cases, the additional expense entailed by the formation of new corporations under these proceedings under section 77B ought to be avoided wherever possible. The law provides that the old corporation is to be released from indebtedness other than that imposed by .the plan. This provision ought to be effective at least in a great majority of cases to render unnecessary formation of new corporations with the attendant expense. However, no doubt counsel in this case exercised their best judgment in the formation of the new Company and the additional work required ought to be paid for by the new Company. The execution of this additional work required, among other things, professional services with regard to deeds of property for the new Eastern Cotton Oil· Company. Mr. Tazewell Taylor, a prominent member of the Norfolk, Virginia, Bar and Mr. Sappington, acted as counsel for the Trustees of the Eastern Cotton Oil Company in this respect. Mr. Taylor has recounted his services in this connection as a witness in the case. Mr. Sappington, of course, has been compensated for this service as others elsewhere. The nature of this particular kind of work was rather routine office work and did not call for special or extraordinary professional services. I am asked to allow $7,500 for this additional service but as Mr. Sappington's services are elsewhere included, I deem an allowance to Mr. Taylor for this particular service adequate in the sum of $1,000, especially as he has received substantial counsel fees in the Eastern Cotton Oil receivership.

■■■ III. *Extraordinary Receivership Expenses:* Messrs. Kenneth C. Royall and Larry. I. Moore, leading members of the Bar of North Carolina, were retained prior to the Davison receivership to defend a damage suit against the Davison Chemical Company and others in which $1,500,000 was claimed (the suit above referred to) for alleged mismanagement of the Meadows Fertilizer Company, a subsidiary. This litigation is referred to as the "Newberry case." The litigation extended over a period of several years and was finally settled without trial on the merits on the basis above mentioned. The settlement was negotiated by Mr. Sappington without responsibility on the part of Messrs. Royall and Moore. They have filed a joint petition and supplementary petition asking allowances for fees in the amount of $35,000 to each, or $70,000 in all. They have received payments on account prior to the receivership aggregating $20,000. They now ask for $50,000 additional. The court has been kept advised from time to time with regard to the nature and character of this litigation. It was undoubtedly important and difficult and presented many troublesome problems. The nature of the claim made required extensive preparation on the part of counsel for adequate defense of the case involving examination of records over a period of years in the past. While the case was never brought to trial on the merits, there were litigated important procedural matters arising from attachments and receiverships obtained by the plaintiff which, if they had been successful, would have greatly embarrassed the Davison Chemical Company by tying up funds of more than $800,000. These counsel successfully resisted these attachment suits and obtained a reversal of an attachment condemnation of $885,540. They argued three appeals in the Supreme Court of North Carolina and one in the 4th Circuit Court of Appeals. See Newberry v. Davison Chemical Co. (C.C.A.) 65 F.(2d) 724; Newberry v. Meadows Fertilizer Co., 202 N.C. 416, 163 S.E. 116; Id., 206 N.C. 182, 173 S.E. 67. Mr. Royall estimates that he alone spent upwards of 300 days in attention to

the case which was given the preferred call on his time in view of its importance. Mr. Moore has not submitted a separate detailed estimate of the time he spent on the case but his testimony stresses the magnitude and importance of the case. The Reorganization Committee opposes the allowance asked for as an excessive fee for the services rendered and point out, among other considerations, that much of the work required from Messrs. Royall and Moore could satisfactorily have been performed by one rather than two counsel and, therefore, there must have been considerable unnecessary duplication of service. Both Messrs. Royall and Moore contend in their testimony to the contrary and advance particular reasons in support of their views. In considering what is a proper fee for the case I think it must be borne in mind that the nature of the professional services was that of *defensive* litigation. While I do not adopt the view that the services of the two counsel were necessarily a mere duplication of work, yet I think the amount of the fee should be determined on the basis of what is just compensation for the professional services in the case as a whole. The court appreciates the diligence and efficiency with which these attorneys have conducted the defense of this important litigation. Considering all the factors in the problem, I reach the conclusion that an aggregate fee of $35,000 is a reasonable compensation to counsel jointly for this whole professional service. The further allowance now to be made to Messrs. Royall and Moore jointly is, therefore, $15,000. It may also fairly be noted in this connection that both Messrs. Royall and Moore have received substantial allowances in the receivership case of the Eastern Cotton Oil Company in the Eastern District of North Carolina.

 Messrs. James U. Dennis, George M. Brady and Hilary W. Gans were appointed special counsel for the Davison Realty Company receivers and Messrs. Brady and Gans, with Mr. Sappington, were counsel for the Davison Realty Trustees. I shall deal with the compensation of Messrs. Dennis, Brady and Gans jointly, leaving to them the reasonable division of the fee for the particular services unless I am hereafter expressly requested by them to make some further division. The reason for this special appointment as an extraordinary receivership expense has heretofore been stated. The particular service rendered by them in this capacity was consideration and presentation of a general additional claim of more than $1,000,000 on behalf of the Realty receivers against the Chemical receivers. The disposition of this claim became important in the reorganization as finally agreed upon. These counsel also successfully prosecuted a claim of the Realty Company on promissory notes given by the former president of the Company for money loaned, the personal liability on which, however, was vigorously contested. The case was tried in this court and resulted in a judgment for the plaintiffs in the amount of $779,812.69, which was successfully defended in the Circuit Court of Appeals. See Miller v. Hockley (C.C.A.4 Jan. 6, 1936) 80 F.(2d) 980. The nature of the case required careful and extensive preparation for trial by counsel. The trial itself occupied several days and the record and briefs on appeal were voluminous. A partial collection on account of the judgment has been obtained consisting of 21,700 shares of stock of the old Davison Chemical Company, for which credit has been given at the rate of $2.00 per share, the market value, however, being somewhat less. The same attorneys have also filed suit against former directors of the Realty Company to recover on account of the same transaction. This suit has not yet been tried. It is possible the efforts of these special counsel may result in further benefit to the new corporation. At the present time I think the allowance to be made to them should be treated only as an allowance on account with further compensation hereafter in the event of further recoveries. I, therefore, make the allowance to them at the present time $6,000, plus their expense bill of $499.08.

IV. *Administration allowances in re Eastern Cotton Oil Company in the Eastern District of North Carolina:* This is the remaining class of allowances to be considered. They come under a different provision of section 77B- subd. (i), 11 U.S.C.A. § 207 (i), provides as follows:

"And the judge shall make such orders as he may deem equitable for the protection of obligations incurred by the receiver or prior trustee, and for the payment of such reasonable administrative expenses and allowances in the prior pro-

ceeding as may be fixed by the court appointing said receiver or prior trustee."

The Eastern Cotton Oil Company receivership in the Eastern District of North Carolina was a prior proceeding as here contemplated. In applying this section of the statute, a question has arisen as to whether the allowances made by order of court in a prior receivership are conclusive or only prima facie correct as to their reasonableness. This matter was considered in the case of the Kelly Springfield Tire Company in this court above referred to. It was there said:

"It has recently been held by the Circuit Court of Appeals for the Second Circuit that under this statutory provision the Judge of the District Court in the reorganization proceedings under [section] 77B [11 U.S.C.A. § 207] must finally determine what are reasonable allowances in prior legal proceedings; and the amount of the allowances made in such prior proceedings are not necessarily conclusive. In re New York Investors, Inc., 79 F.(2d) 179 (C.C.A.2); In re New York Investors, Inc., 79 F.(2d) 182 (C.C.A.2); In re Allied Owners Corporation, 79 F.(2d) 187 (C.C.A.2). This same view of the matter had previously been announced by this Court at a prior hearing in this same case."

In the Kelly Springfield Case certain allowances had been made after contest by District Judge Hurlbut in the Southern District of New York which, after consideration, were confirmed as reasonable by this court. With respect thereto, it was said:

"Nevertheless I have concluded that I should approve them * * * because the matter was evidently carefully considered by the District Judge after hearing both sides and with, of course, fuller and better knowledge of what had been done in the particular Court than I can have at a distance. And although the ultimate responsibility is on this Court to determine the allowances to be finally made, it is obvious that in such a situation the judgment of the judge having the instant jurisdiction, after contest, should be accorded very great weight, and should not be departed from unless, in view of the perspective of the whole case, the allowances seem clearly to be unreasonable."

In the Eastern Cotton Oil Company receivership Judge Meekins has made the following allowances to receivers and counsel:

To J. V. Champion as receiver, amount already paid $25,388.78; additional allowance unpaid $11,250;

J. H. LeRoy, Sr., as receiver, amount already paid $8,821.38; additional allowance still unpaid $11,250;

To Tazewell Taylor, Sr., as counsel for the receivers in ancillary proceedings in Virginia, amount already paid $8,000; additional amount allowed $5,000;

M. B. Simpson, as counsel for receivers, amount already paid $8,000; additional allowance made $3,000;

Kenneth C. Royall as counsel for the receivers, amount already paid $4,750, additional allowance $1,000.

Larry I. Moore, as counsel for the receivers, amount already paid $4,750; additional allowance $1,000;

P. W. McMullen as special counsel to the receivers in particular litigation was also allowed by Judge Way in the Eastern District of Virginia an additional amount of $3,000, $500 having been previously paid. These allowances the Reorganization Committee either oppose as unreasonably large or make no recommendations as to amount. It is to be noted, however, that most, if not all, of them were made by Judge Meekins over opposition and contest by counsel for the receivers of the Davison Chemical Company. As indicated in the Kelly Springfield Case, it is my view that allowances made in prior receivership proceedings by other United States District Judges and in other districts, especially after contest, carry a very strong presumption as to their reasonableness, although not absolutely conclusive. As they are to be accepted as prima facie correct, I take the view that the burden of proof is on those who object thereto to submit evidence to show that the allowances are unreasonable, unless this clearly appears on the face of the statements as made in the petitions for the confirmation here of the allowances so previously made. In this case most of the petitioners in addition to reciting the services for which allowances have been made to them, have also testified personally here, and there has been little said in opposition to the reasonableness of the amounts that have been allowed. I do not feel warranted in refusing to approve as reasonable in amount,

on the evidence before me, any of the allowances made by Judge Meekins or Judge Way to these attorneys. They must have had a very much better view of the situation locally than I could possibly have at this distance. I am, therefore, practically limited to the affirmative testimony in support of the allowances by the several petitions and the oral testimony of the applicants. I am not able to say on the basis of what has been submitted to me in this connection that these allowances were unreasonable in amount. It is quite possible or even probable that applying the principles hereinabove announced, if I were passing in the first place on the amounts, the total fees allowed to the numerous counsel might in the aggregate have been less, but coming as they do to me with the prima facie presumption of their correctness, I do not feel justified in disturbing them.

The allowance to the receivers of the Eastern Cotton Oil Company, however, present somewhat different considerations. Before the receivership of the Eastern Cotton Oil Company its business and that of the Meadows Fertilizer Company, another Davison subsidiary, had been administered for some time by Mr. J. V. Champion (theretofore an employe of the Davison Chemical Company in the Sales Department at a salary of $7,500 a year) at an annual salary of $10,000. Of course Mr. Champion as president or manager of these subsidiaries of the Davison Chemical Company was naturally not charged with the sole financial responsibility of management, and after the receiverships of the two Companies his duties and responsibilities in this respect were somewhat increased. Judge Meekins appointed him one of the receivers and as he had such a definite relation to the Davison Chemical Company, no doubt thought in the interests of all creditors and stockholders that an additional receiver should be appointed. Accordingly Mr. J. H. LeRoy, Sr., of North Carolina, was so appointed. The receivership lasted for a little more than two years. These two gentlemen were also appointed receivers of the Meadows Fertilizer Company, with which, however, we are not here directly concerned. Mr. Champion as receiver of these two Companies has already been paid $36,250. He has been allowed an additional amount of $11,250 by Judge Meekins, chargeable to the Eastern Company. Mr. LeRoy has already received $14,500 and likewise has been allowed $11,250 additional payable by the Eastern Company. Mr. Champion has already been paid salary at an annual rate much in excess of his salary of $10,000 before the receivership and he is now continuing as president or manager of the new Eastern Company and the Meadows Company at the same salary of $10,000 per year. Mr. LeRoy by reason of indisposition did not personally testify in this case but his son, a member of the Bar, testified from his own knowledge as to his father's activities and prior earning capacity. The Reorganization Committee points out that the total compensation to the receivers already paid should be considered entirely adequate and that approving additional allowances now requested would result in the executive salaries for this Company in receivership to be more than treble what had been paid for management prior to the receivership. And it is also pointed out that the receivership operations for the two year period resulted unfortunately in a substantial operating loss of about $500,000. This fact is not recited in criticism of the management by receivers, as very probably there were adverse business conditions which explained the loss. However, where a receivership business is conducted at a loss that fact is not without relevance in determining reasonable compensation. Certainly it is of itself no justification for great increase in operating expenses. It is indeed unfortunate for creditors and stockholders when the necessary effect of a receivership is to greatly increase operating expenses. And this seems to have been the necessary result in this case by the appointment of two receivers instead of one. But as already indicated, Judge Meekins presumably thought this necessary to protect the interests of all concerned, and some increase of expense would therefore seem to have been inevitable. Under all the circumstances and in view of the evidence submitted on the allowances made to Mr. LeRoy, and the consideration that Judge Meekins' allowance is prima facie correct, I do not feel warranted in disturbing the allowance made to him. The evidence is to the effect that the receiverships occupied most of his time for two years and his previous earning capacity was not greatly less than the

total allowances to him. It is therefore confirmed in the amount of $11,250.

█ I have, however, on the evidence a different view with regard to the allowance to Mr. Champion. His salary both before and subsequent to the receivership for not greatly different work was at the rate of only $10,000 a year. He has already received compensation as receiver substantially in excess of this amount. He also had the assistance during the receivership of Mr. LeRoy who presumably somewhat shared financial burdens with him. His contention is that his burden in financing the receivership was an onerous duty imposed by the receivership situation which ought to entitle him to greater compensation than his annual salary before and after the receivership. Granting this, I think that he has been reasonably compensated by the amounts already paid. I therefore disallow the further amount that he now requests, as unreasonable. While I hesitate very much to fail to approve this particular allowance made by Judge Meekins, I reach the conclusion that it would be an undue burden upon the new Eastern Cotton Oil Company to impose this additional expense on it.

█ Eugene R. Pickerell, an attorney of New York City, was employed as attorney for the Eastern Cotton Oil Company in a specific customs case. By his petition he asks an allowance of $4,143.96 for services rendered since September 10, 1932, plus $9.23 for expenses. However, it appears from the petition that the services are not completed and are being rendered under a contractual arrangement. The services are not properly a reorganization expense or costs of receivership administration. He is rather in the position of a creditor of the Eastern Company as his services are continuing, and, I am advised by counsel for the Company, the obligation therefor will be assumed by the new Eastern Company. I do not think it appropriate to make the allowance as a reorganization expense as it is rather in the nature of a current expense of operation.

I have examined all the petitions for allowances furnished me by the clerk; and I believe I have herein passed on each and all of them. If, by any inadvertence, any petitions have escaped my attention or any matters covered in the petitions have not been herein fully covered, they can be brought to my attention for further consideration.

In several cases I have made a single aggregate allowance to committees to cover compensation of their members, their cash expenditures and fees of their counsel. I have thought it would probably be more satisfactory to the committees and their counsel to apportion the fund between themselves rather than to have it made here. If, however, they do not succeed in agreeing among themselves on the apportionment, I shall be glad to give the matter further consideration upon request.

In several other cases I have allowed to various parties, in addition to fees or compensation, their cash expenditures as requested. These allowances should be considered as being made only in principle. As the separate items are very numerous, it is not practicable for me to undertake to pass on each one in detail nor to ask for separate vouchers. As the payments are to be made by the new Company which has a competent auditorial force it can ask, if desired, for supporting vouchers and can make all necessary audits preliminary to making payment. If any controversy should arise from the matter it can be referred back to me for further attention, with the possibility of reference to a court auditor if necessary.

█ In summarizing the allowances above approved, it will be found that the aggregate allowances for expenses of the reorganization plan and proceeding proper is only $71,156.29. In my judgment this amount is moderate and reasonable when it is considered that the reorganization dealt with a very complicated industrial enterprise with assets of approximately $10,000,000, and the result has been eminently successful in rehabilitating the enterprise as a going concern, with a present comparatively satisfactory market value for the securities and substantial prospect for future betterment. The testimony is to the effect that the market for the stock of the new Davison Chemical Corporation is on the basis of 60% of its old debts and in the case of the Realty Company, the market quotation is about 90%. It is obvious that the total cost of the reorganization proceeding is far less than the highly probable shrinkage in values which would have been caused by liquidation.

The other allowances herein made for the several classes thereof are as follows:

For current receivership and trustee expenses, in addition to partial allowance on account heretofore made, $96,300; for extraordinary receivership and trustee expenses (caused by litigation of inherited controversies) the additional allowances are $21,499.08; and for additional expenses of receivership of the Eastern Cotton Oil Company in the Eastern District of North Carolina, I have approved allowances made by Judges in the original and ancillary proceeding in the Eastern District of Virginia in the amount of $24,500. None of these latter allowances can properly be regarded as reorganization expenses. For the most part they are only such expenses as the enterprise as a going concern would necessarily have incurred; and for the Davison Company, as has already been indicated, they are materially less than similar pre-receivership expenses.

It will be apparent that the allowances as made are greatly less than those asked. It will be only natural if the petitioners for allowances feel dissatisfied with the drastic reductions made. They should remember, however, that the principles recently announced by the Supreme Court in numerous cases very clearly require allowances in bankruptcy and receiverships to be moderate and not liberal. On the other hand, it is possible that to some persons the aggregate of all the allowances made may still seem very large. But here it must be remembered, as initially was pointed out in this opinion, that the services herein compensated for the most part extend over a period of several years and the number of persons to be compensated is very large. And it has been noted that the classes of persons to be compensated are expressly enumerated in the new Act of Congress which is here being applied. Mr. Machen, as counsel for the Strother Committee, has pointed out that the legislative history of this new Act, with respect to the classes of persons entitled to compensation for their services in this reorganization proceeding, would seem to indicate that it was the intention of Congress to make the reorganized company bear the burden of the whole reorganization expense and relieve the separate classes of security holders from the individual burden of all those expenses which were actually necessary in the accomplishment of the plan of reorganization and the court proceeding therefor. In so providing Congress apparently departed from the policy in the original bankruptcy act which very definitely limits the classes of people to be compensated and in most respects specifically prescribes the rate of compensation. The new Act is also a departure from the previous legal policy in that it requires a minority of creditors and stockholders to involuntarily accept a plan of reorganization which is approved by two-thirds of creditors and a majority of stockholders, when confirmed by the court after a finding that it is fair and equitable, non-discriminatory and feasible. Possibly the controlling thought in putting the whole reorganization expenses, including the costs of prior receiverships, on the reorganized company was that thereby individual creditors or stockholders whose interests are nearly always reduced by the reorganization, should not individually, in addition to this reduction of interest, sustain the additional burden of individual expense occasioned by their participation in the plan and the proceeding relating thereto. And it may have been a part of the thought which inspired this provision of the Act that, the reorganization being for the assumed benefit of all, the necessary expense of the plan and proceeding should be a burden upon all security holders and not largely borne by particular groups who actively participate by counsel or other representatives as committees, in the formulation and consummation of a plan which inures to the benefit of all of the same class. But to put some limitation on the extent of the burden to be assumed by the reorganized company, the statute limits the expenses to those which are actual and necessary in connection with the proceeding and the plan and to reasonable compensation; as has been more fully above explained. And finally, it may be observed that the reorganization of a financially embarrassed corporation is usually much more advantageous to its security holders than forced liquidation. Reorganization is constructive rehabilitation and when deemed feasible holds out definite prospect of future success. Liquidation is, however, highly destructive of all security interests. In other words, reorganization as contrasted with liquidation is presumably worth all it actually and necessarily costs—at least where the cost is made moderate.

It is, therefore, now this 27 day of February, 1936, ordered and adjudged by the District Court of the United States for the District of Maryland (sitting in bankruptcy) that the allowances as below listed and itemized are allowances approved and fixed in the respective amounts enumerated; and it is further ordered that the allowances in Groups I, II, and III as below classified, shall be paid to the persons respectively named in the amounts respectively set opposite their names by the Trustees of the Davison Chemical Company and of the Davison Realty Company, or by the New Davison Company; and the allowances enumerated in Group IV shall be paid to the persons respectively named in the amounts set opposite their respective names by the Trustees of the Eastern Cotton Oil Company or by the New Eastern Company; for services, expenses and counsel fees as stated in the aforegoing opinion.

And it is further ordered that the new Eastern Company shall assume the contract for professional services with Eugene R. Pickerell, attorney.

And it is further ordered that the court retain jurisdiction in the subject matter for further attention thereto if necessary as above indicated.

Allowances and payments are to be made as follows:

| Group I: | Expenses of Reorganization proceeding and plan: | | |
|---|---|---|---|
| | E. J. Quintal | | |
| | Henry B. Thomas, Jr. | | |
| | Charles B. Gillet | | |
| | J. Edward Johnston, Reorganization Committee | | $ 7,500 |
| | Milbank, Tweed, Hope & Webb, Attys. for Reorganization Committee | | |
| | For fee | $30,000 | |
| | Cash disbursements | 6,880.82 | 36,880.82 |
| | Piper, Carey and Hall, Local attys. Reorganization Committee | | |
| | Fee | 1,500 | |
| | Disbursements | 42.89 | 1,542.89 |

| Group I: | Expenses of Reorganization proceeding and plan—Cont'd. | | |
|---|---|---|---|
| | Charles B. Gillet | | |
| | C. Prevost Boyce | | |
| | Philip L. Poe, Committee, including counsel fee and all expenses | | 7,500 |
| | T. Nelson Strother | | |
| | A. R. L. Dohme | | |
| | C. T. Williams, Committee, for all expenses and counsel fee | | 6,000 |
| | B. H. Griswold, Jr. | | |
| | Louis S. Zimmerman | | |
| | Mr. Castles, Stockholders' Committee Compensation and expenses | | 3,500 |
| | Clarke & Allen, Attys. for Stockholders' Committee | | |
| | Fee | 1,500 | |
| | Disbursements | 280.93 | 1,780.93 |
| | Sylvan Hayes Lauchheimer, Atty. | | 750.00 |
| | Equitable Trust Co. | | 250.00 |
| | France, McLanahan & Rouzer | | 350.00 |
| | Chase National Bank, Depository | | 3,109.04 |
| | Baltimore National Bank, Depository | | 1,943.61 |
| | **Group I Total** | | **$71,156.29** |

| Group II | Current Receivership and Trustee Expenses | |
|---|---|---|
| | Chester F. Hockley | $43,300.00 |
| | Henry F. Treide | 21,700.00 |
| | G. Ridgely Sappington, Atty. | 30,000.00 |
| | R. H. Kelley, Atty. | 250.00 |
| | Knight, Thompson and Turner | 50.00 |
| | Tazewell Taylor | 1,000.00 |
| | **Group II Total** | **$96,300.00** |

| Group III | Extraordinary Receivership and Trustee Expenses | | |
|---|---|---|---|
| | Kenneth C. Royall & Larry I. Moore (jointly) | | $15,000.00 |
| | James U. Dennis | | |
| | George M. Brady | | |
| | Hilary W. Gans (on account of fee) | 6,000 | |
| | Disbursements | 499.08 | 6,499.08 |
| | **Group III Total** | | **$21,499.08** |

| Group IV | Administration allowances made In re Eastern Cotton Oil Co. in the Eastern District of North Carolina | |
|---|---|---|
| | J. H. LeRoy, Sr. | $11,250.00 |
| | Tazewell Taylor, Sr. | 5,000.00 |
| | M. B. Simpson | 3,000.00 |
| | Kenneth C. Royall | 1,000.00 |
| | Larry I. Moore | 1,000.00 |
| | P. W. McMullen | 3,000.00 |
| | **Group IV Total** | **$24,250.00** |